**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

In Re: RICHARD H. PLEASANTS, IV,
Debtor.

RICHARD H. PLEASANTS, IV,
Appellant,

No. 99-2257

v.

E. G. KENDRICK, JR.; RANDY P.
KENDRICK,
Appellees.

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Claude M. Hilton, Chief District Judge.
(CA-99-802, BK-97-12702,
BK-97-1313)

Argued: May 3, 2000

Decided: July 12, 2000

Before WILKINSON, Chief Judge, and WILKINS and
WILLIAMS, Circuit Judges.

_____

Affirmed by published opinion. Chief Judge Wilkinson wrote the
opinion, in which Judge Wilkins and Judge Williams joined.

_____

**COUNSEL**

**ARGUED:** Kenneth C. Bass, III, VENABLE, BAETJER & HOW-
ARD, L.L.P., McLean, Virginia, for Appellant. Jill Marie Dennis,

HUNTON & WILLIAMS, McLean, Virginia, for Appellees. **ON BRIEF:** Damon W.D. Wright, VENABLE, BAETJER & HOWARD, L.L.P., McLean, Virginia, for Appellant. Stephen M. Sayers, HUNTON & WILLIAMS, McLean, Virginia, for Appellees.

_____

**OPINION**

WILKINSON, Chief Judge:

E.G. and Randy Kendrick filed this adversary complaint in bankruptcy court, claiming that the debt Richard Pleasants owed them was nondischargeable. The bankruptcy court found that the debt arose from Pleasants' fraud and thus disallowed discharge pursuant to 11 U.S.C. § 523(a)(2)(A). See Kendrick v. Pleasants (In re Pleasants), 231 B.R. 893 (Bankr. E.D. Va. 1999). The district court affirmed, and Pleasants appeals. Finding no error, we affirm.

I.

In the late 1980s, the Kendricks met Pleasants, the president and sole shareholder of Pleasants & Associates (P&A). The Kendricks were planning an addition to their home. In the course of discussions, Pleasants erroneously represented that he was an architect who was educated at the University of Virginia School of Architecture. Over the next five years, the Kendricks paid Pleasants to prepare drawings outlining architectural options for their home. In 1993, the Kendricks hired P&A to prepare detailed architectural plans and to perform construction estimates. In 1994, the Kendricks entered into a construction contract with P&A.

When the project suffered from serious delays, the Kendricks hired Frank Reifsnyder, a licensed architect and independent consultant, to evaluate the project's status. The Kendricks discovered that Pleasants was not a licensed architect and had not attended the University of Virginia School of Architecture. The Kendricks confronted Pleasants. Pleasants apologized and asked for a second chance. The Kendricks agreed and entered into a Forbearance Agreement with P&A and Pleasants. Under this agreement, the Kendricks would not declare

2

P&A in default, terminate the construction contract, or pursue legal remedies so long as P&A met nine milestones. When P&A failed to meet a single milestone, the Kendricks fired Pleasants and P&A.

The Kendricks brought suit in Fairfax County Circuit Court seeking $1,262,296 in damages for fraud, breach of contract, and negligence. Three days before trial, Pleasants and P&A filed for bankruptcy. The Kendricks then filed this adversary complaint, seeking to have their claim against Pleasants deemed nondischargeable pursuant to 11 U.S.C. § 523(a)(6). Section 523(a)(6) provides for denial of a discharge "from any debt for willful and malicious injury by the debtor to another entity or to the property of another entity."

At trial before the bankruptcy court, numerous witnesses, in addition to the Kendricks, testified about the fraud perpetrated by Pleasants. One of them reported having had a "very long discussion" with Pleasants about his "going to architectural college at UVA." Pleasants' own administrative assistant testified that she had believed Pleasants to be an architect because of the degrees hanging on his office wall. And five witnesses reported that when Pleasants was introduced as an architect, he made no effort to correct the introduction. The court also learned that P&A's letterhead, business cards, advertisements, and signs stated, "Pleasants & Associates, Architectural Design and Construction." Indeed, Pleasants had even listed P&A in the phone book under "Architects." There was also testimony about the deplorable condition in which Pleasants' delays and faulty designs had left the Kendrick home. For example, water had been found "in every single room." Frank Reifsnyder pointed out numerous structural problems and building code violations. He noted that the master bedroom roof could have collapsed when loaded with snow. He added that a gas-fired mechanical unit had been improperly placed below a wood stairway -- a stairway which served as the only means of egress from the carriage house's second floor.

After the trial had ended, the Kendricks filed a motion to amend their complaint to include a reference to 11 U.S.C. § 523(a)(2)(A). Section 523(a)(2)(A) provides for a denial of a discharge "from any debt for money, property, services . . . to the extent obtained by false pretenses, a false representation, or actual fraud." The bankruptcy court granted the Kendricks' motion to amend and found their

3

$1,262,296 claim nondischargeable pursuant to § 523(a)(2)(A). See In re Pleasants, 231 B.R. at 897-901. The court did not address the applicability of § 523(a)(6). The district court affirmed the bankruptcy court's judgment. Pleasants now appeals.

II.

Pleasants raises two contentions with respect to the bankruptcy court's judgment on the merits of the Kendricks'§ 523(a)(2)(A) claim. Pleasants first argues that § 523(a)(2)(A)'s "obtained by" language requires that some portion of a creditor's claim must have been directly transferred from the creditor to the debtor. And Pleasants notes that none of the Kendricks' claim was for consideration directly transferred to Pleasants. Rather, the Kendricks' claim included only amounts paid by the Kendricks to third parties, such as payments to the architect and builder hired to correct and complete the project.

Pleasants' argument is misplaced. In Cohen v. de la Cruz, a group of tenants filed an adversary proceeding against their bankrupt land-lord, seeking to have their claim for excess rents, treble damages, and attorney's fees deemed nondischargeable pursuant to§ 523(a)(2)(A). 523 U.S. 213, 215 (1998). The Supreme Court found that the tenants' entire claim was nondischargeable, not simply the portion of the claim that was transferred to the fraudulent debtor. The Court stated, "We hold that § 523(a)(2)(A) prevents the discharge of all liability arising from fraud." Id. (emphasis added); see also id. at 218 (Section 523(a)(2)(A) bars "discharge of debts `resulting from' or `traceable to' fraud." (quoting Field v. Mans, 516 U.S. 59, 61, 64 (1995)). This language is broad enough to encompass a situation in which no por-tion of a creditor's claim was literally transferred to the fraudulent debtor.

Indeed, if it were otherwise, the Bankruptcy Code's objectives "would be ill served." Id. at 222. The Code is intended to "afford[ ] relief only to an honest but unfortunate debtor." Id. at 217. Thus, "per-petrators of fraud" such as Pleasants "are not allowed to hide behind the skirts of the Bankruptcy Code." Foley & Lardner v. Biondo (In re Biondo), 180 F.3d 126, 130 (4th Cir. 1999). It is "`unlikely that Congress . . . would have favored the interest in giving perpetrators of fraud a fresh start over the interest in protecting victims of fraud.'"

Cohen, 523 U.S. at 223 (quoting Grogan v. Garner, 498 U.S. 279, 287 (1991)).

In a related argument, Pleasants contends that his fraud did not proximately cause the Kendricks' damages. In fact, however, Pleasants' fraud caused the Kendricks no end of trouble and expense. The bankruptcy court found that it was precisely "because Pleasants misrepresented his credentials, thereby inducing the Kendricks to hire an unqualified firm," that the Kendricks suffered the damages they did. Kendrick, 231 B.R. at 896 n.4, 899 & nn.11-13. And the Kendricks note that "Pleasants' lack of architectural credentials resulted in a project plagued with structural defects and code violations," and "his inability to perform the architectural work necessary to bring the project to closure caused the endless delays that resulted in still more damages."

Pleasants counters that the Forbearance Agreement serves as an intervening cause, thereby breaking the chain of proximate cause with respect to Pleasants' original misrepresentations. The Forbearance Agreement, however, was a way for the Kendricks to salvage what they could from the situation at hand -- a situation into which the Kendricks had been drawn deeper and deeper because of Pleasants' misrepresentations. We decline to hold that the Forbearance Agreement absolves Pleasants of the consequences of his misconduct, thereby punishing the Kendricks for trying to minimize their damages and for giving Pleasants a second chance. As the Forbearance Agreement is not an intervening cause, the Kendricks' damages are, as found by the bankruptcy court, attributable to Pleasants' misrepresentations.*

_____

*Pleasants also claims that the bankruptcy court improperly permitted the Kendricks to proceed to judgment under § 523(a)(2)(A). Inasmuch as this case was both pled and tried before the bankruptcy court as a matter of fraud, we discern no prejudice whatsoever to Pleasants from having the Kendricks' judgment of nondischargeability rest upon § 523(a)(2)(A).

III.

For the foregoing reasons, the judgment of the district court is

<u>AFFIRMED</u>.

6