In re June Laurie ROUNTREE.

Pamela C. Nunnery, Plaintiff–Appellee,

v.

June Laurie Rountree, Defendant–Appellant.

Bankruptcy No. 01–21480–SCS.
No. 2:04cv555.

United States District Court,
E.D. Virginia,
Norfolk Division.

Dec. 27, 2004.

Anthony Franklin Radd, Norfolk, VA, Gregory Kim Pugh, Gregory K. Pugh, P.C., Virginia Beach, VA, for June L. Rountree, Appellant.

John Edwin Bedi, John E. Bedi, Attorney at Law, Virginia Beach, VA, for Pamela Nunnery, Keith Nunnery, Appellees.

Debera F. Conlon, Office of the U.S. Trustee, Norfolk, VA, for U.S. Trustee.

## *ORDER*

FRIEDMAN, District Judge.

This matter is before the court on June Laurie Rountree's appeal from a ruling rendered by the United States Bankruptcy Court for the Eastern District of Virginia. Ms. Rountree appeals a ruling in which the bankruptcy judge granted summary judgment to plaintiff, Pamela C. Nunnery, holding that her North Carolina judgment against Ms. Rountree is nondischargeable under section 523(a)(2)(A) of the Bankruptcy Code. For the reasons stated herein, this ruling is **REVERSED**.

### I.  Background

The appellant, June Laurie Rountree, ("Debtor"), filed a petition under Chapter 7 of the United States Bankruptcy Code in the Eastern District of Virginia, Norfolk Division on April 13, 2001. The bankruptcy judge appointed Barry W. Spear as the Chapter 7 trustee. The appellee, Pamela C. Nunnery ("Creditor"), filed a Complaint to Determine Dischargeability on July 12, 2001.

The facts behind this complaint arose from an automobile accident in which Nunnery was involved with Eric Baucom, in Charlotte, North Carolina. Nunnery filed suit against Baucom and his company in the North Carolina Superior Court. Baucom's insurance company subsequently hired Rountree to investigate and conduct surveillance on Nunnery to determine the validity of her injuries. Rountree's investigation included personal contact with Nunnery, including befriending Nunnery under the guise that she wished to move into Nunnery's neighborhood. Eventually, Rountree was able to manipulate Nunnery into engaging in activities that her alleged injuries would not have otherwise allowed her to participate, such as water skiing, amusement park rides, horseback riding, and jet skiing. Rountree videotaped Nun-

nery engaging in such activities and used these tapes as evidence in Nunnery's litigation against Baucom. Nunnery subsequently received an unfavorable judgment in the North Carolina litigation.

Consequently, Nunnery and her husband, Keith Nunnery, filed a complaint against Rountree and her husband, Rodney Rountree, in the Superior Court of Gaston County, North Carolina alleging 1) intentional tort; 2) gross negligent tort; 3) unfair and deceptive trade practice in violation of North Carolina law; 4) fraud; 5) invasion of privacy; 6) intentional infliction of emotion distress; and 7) negligent infliction of emotion distress. The Nunnerys were awarded a non-binding arbitration judgment in the amount of $1,000,000. However, Rountree was granted a trial de novo, which was scheduled for April 16, 2001. Subsequently, Rountree filed for bankruptcy, which led to a stay of the litigation in the North Carolina Court.

In response to Rountree's bankruptcy proceeding, the Nunnerys filed the instant Complaint to Determine Dischargeability of Debt asking the court to find the $1,000,000 arbitration award nondischargeable. The bankruptcy judge transferred the case to the District Court for the Eastern District of Virginia because the complaint was based on a personal injury tort claim. Subsequently, the Nunnerys filed a Motion for the District Court to Abstain arguing that the matter would be better adjudicated in the North Carolina court. The District Court agreed and ordered the parties to proceed with litigation in North Carolina and to report back to the District Court within six month with the outcome of the litigation.

The case proceeded before the Superior Court of Gaston County, North Carolina, where the jury awarded Pamela Nunnery $930,000.00 in punitive damages, which the judge subsequently reduced to $250,000.00,

and $70,000.00 in compensatory damages for unfair and deceptive trade practices affecting commerce. The judgment was awarded solely to Pamela Nunnery against June Rountree.[1] Nunnery's counsel subsequently notified the District Court of the Eastern District of Virginia that the litigation had been resolved. The District Court informed the parties that the instant action pending in the court, the Complaint to Determine Dischargeability of Debt, would be dismissed if the parties did not otherwise petition the court. After receiving no other correspondence from either party, the District Court dismissed Nunnery's complaint. However, the Nunnerys filed a Motion for Relief from the order, alleging mistake or excusable negligence on behalf of their counsel. The District Court granted the Nunnerys' relief and remanded the case to the Bankruptcy Court based on the Nunnerys' claim that their attorney had mistakenly thought that the dismissal would automatically remand the case to the Bankruptcy Court.

On May 8, 2003, the Nunnerys filed the Motion for Summary Judgment that is the subject of this appeal. On August 2, 2004, the bankruptcy judge granted the Motion for Summary Judgment to Pamela Nunnery alone,[2] holding that "the judgment entered in the North Carolina litigation is not discharged pursuant to section 523(a)(2)(A) of the Bankruptcy Code." (Summ. J. Order at 55.) The court explained that "[t]he underlying record of the North Carolina litigation is sufficient to determine that Rountree's actions con-

stituted fraud under section 523(a)(2)(A)." (*Id.*)

On September 28, 2004, Rountree appealed the decision of the Bankruptcy Court. In her appellant brief, Rountree claims that section 523(a)(2)(A) of the Bankruptcy Code requires that "money, property, or services, or an extension, renewal or refinancing of credit be obtained from the creditor by false pretenses, false representations, or actual fraud" of the debtor in order to make a debt nondischargeable under that section. (Appellant Br. at 7.) Rountree claims that the judgment obtained by Nunnery against Rountree should be discharged because Rountree did not obtain anything of value from Nunnery as a result of Rountree's misrepresentations. In other words, Rountree argues that because the judgment was based on emotional loss which Nunnery incurred as a result of Rountree's misrepresentations, not monetary loss, the debt does not implicate the type of fraud contemplated in 523(a)(2)(A). Thus, Rountree claims that Nunnery has not met her burden of proof as to the required elements of section 523(a)(2)(A).

On October 13, 2004, Nunnery filed a response brief claiming that the policy behind section 523(a)(2)(A) requires nondischargeability for *all liabilities* resulting from *any type* of fraud, even if the fraudulent debtor never received anything of value from the creditor. On October 25, 2004, Rountree filed a reply brief refuting Nunnery's interpretation of section 523(a)(2)(A). Thus, the case is ripe for review by this court.

1. Nunnery's husband voluntarily dismissed his claims against June Rountree, and both Nunnery and her husband dismissed their claims against Rountree's husband.

2. Because Nunnery's husband had voluntarily dismissed his claims with prejudice against Rountree and her husband, the court denied

summary judgment for the portion of the complaint that asserts that the judgment debt owed to Keith Nunnery is not dischargeable. Furthermore, since Rodney Rountree, Rountree's husband, was not listed in the instant Complaint, the summary judgment does not apply to any debt owed by Mr. Rountree.

The following issues are presented by this appeal: (1) whether the Bankruptcy Court correctly determined that the judgment is nondischargeable under section 523(a)(2)(A) of the Bankruptcy Code; and (2) if so, whether the punitive damages portion of the North Carolina judgment is also nondischargeable.

## II. Standard of Review

■ The court reviews de novo the conclusions of law reached by the United States Bankruptcy Court. *Addison v. Reavis,* 158 B.R. 53, 55 (E.D.Va.1993). The ruling of a bankruptcy judge constitutes reversible error only if the bankruptcy judge incorrectly applied the law to the factual findings. *In re Southeast Hotel Prop. Ltd. Partnership,* 99 F.3d 151, 153 (4th Cir.1996) (*citing In re Johnson,* 960 F.2d 396, 399 (4th Cir.1992)). There appear to be no factual issues in dispute in this matter; thus, the court only reviews the conclusions of law made by the bankruptcy judge.

## III. Discussion

On the record before the court, it appears that the bankruptcy judge granted the Creditor's motion for summary judgment because he determined that the Creditor had satisfied the elements required for establishing fraud under section 523(a)(2)(A) of the Bankruptcy Code, thus making the Creditor's North Carolina judgment nondischargeable. Section 523 of the Bankruptcy Code provides several exceptions to discharge of debt in bankruptcy. The section at issue, section 523(a)(2)(A) provides in pertinent part:

(a) A discharge under section 727 . . . of this title . . . does not discharge an individual debtor from any debt—

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained, by—

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition.

11 U.S.C. § 523(a)(2)(A).

■ Because the policy behind the Bankruptcy Code is to give the debtor a fresh start, the plaintiff has the burden of proving that a debt is nondischargeable. Bankr.R. 4005. Such burden under section 523(a)(2)(A) requires a showing of fraud by a preponderance of the evidence. *Grogan v. Garner,* 498 U.S. 279, 291, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). Furthermore, "statutory exceptions to dischargeability are narrowly construed in favor of the debtor." *In re Brevard,* 200 B.R. 836, 842 (Bankr.E.D.Va.1996)(citing *Hagan v. McNallen (In re McNallen),* 62 F.3d 619, 625 (4th Cir.1995); *Blackwell v. Commonwealth of Va. Dept. of Taxation,* 115 Bankr.86, 88 (Bankr.W.D.Va.1990)) (citations omitted).

■ In order to prove fraud under section 523(a)(2)(A), the creditor must prove:

(1) That the debtor made a representation;

(2) That at the time the representation was made, the debtor knew the representation was false;

(3) That the debtor made the false representation with the intention of deceiving the creditor;

(4) That the creditor relied on such representation; and

(5) That the creditor sustained the alleged loss and damage as the proximate result of the false representation.

*Parker v. Grant (In re Grant),* 237 B.R. 97, 112 (Bankr.E.D.Va.1999).

In his opinion, the bankruptcy judge accurately set forth both the applicable portion of § 523(a)(2)(A) and the above factors for proving fraud under this subsection. However, he failed to include any

analysis as to whether the Creditor's loss constitutes "money, property, or services" under § 523(a)(2)(A). Instead, the bankruptcy judge simply focused on whether the Creditor satisfies the five elements of fraud required by the statute. Using the doctrine of collateral estoppel, the bankruptcy judge held that during the course of the North Carolina litigation that either. the court had found by a matter of law or the jury had found by a preponderance of the evidence facts sufficient to satisfy each of the five listed elements required to prove fraud under section 523(a)(2)(A). Thus, based on his fraud analysis alone, the bankruptcy judge concluded that the Creditor satisfied her burden of proving the debt nondischargeable under § 523(a)(2)(A).

However, the Debtor believes that the Bankruptcy Court erred in applying section 523(a)(2)(A) to a debt for which the Debtor never fraudulently obtained any money, property, or services from the Creditor. This court agrees with the Debtor and finds that even though the North Carolina court found that the Debtor had committed fraud, it was not the type of fraud contemplated in section 523(a)(2)(A). Thus, because section 523(a)(2)(A) is inapplicable to the facts of this case, the judgment against the Debtor is dischargeable.

■ *Colliers on Bankruptcy*, the leading treatise on bankruptcy law, explains the application of section 523(a)(2)(A):

The determination of whether a debt is excepted from discharge under this category depends upon *whether money, property or services, or an extension, renewal or refinancing of credit has been obtained,* the character of the property, services or extension, renewal or refinancing of credit, and the character of the false pretenses or representation or actual fraud.

... For a debt to fall within this exception, *money, property or services, or an extension, renewal or refinancing of credit must actually have been obtained by the false pretenses or representations or by means of actual fraud.* The purposes of the provision are *to prevent a debtor from retaining the benefits of property* obtained by fraudulent means and to ensure that the relief intended for honest debtors does not go to dishonest debtors. *Before the exception applies, the debtor's fraud must result in a loss of property to the creditor.*

The United States Supreme Court has stated that in this context:

[A]t most it ("property") denotes something subject to ownership, transfer, or exclusive possession and enjoyment, which may be brought within the dominion and control of a court through some recognized process. This is certainly the full extent of the word's meaning as employed in ordinary speech and business and the same significance attaches to it in many carefully prepared writings.

COLLIER ON BANKRUPTCY ¶ 523.08[1][a], [b], [d] (15th ed., rev.2004) (emphasis added). Furthermore, the treatise explains that "[n]ot all frauds are included within the exception of section 523(a)(2)(A), but *only those involved in the obtaining of money, property or services by 'false pretenses or false representations.'*" *Id.*

■ In *Cohen v. de la Cruz*, 523 U.S. 213, 118 S.Ct. 1212, 140 L.Ed.2d 341 (1998), the Supreme Court affirms the theory that § 523(a)(2)(A) only applies to situations in which the debtor has fraudulently acquired money, property, or services from the creditor. In *Cohen*, when a landlord was ordered to refund excessive rents that he had charged his tenants, he filed for bankruptcy under Chapter 7 of the Bank-

ruptcy Code. *Id.* at 215, 118 S.Ct. 1212. The tenants filed a complaint claiming that the debt was nondischargeable under section 523(a)(2)(A) and a claim for treble damages, attorney's fees, and costs under the New Jersey Consumer Fraud Act. *Id.* The bankruptcy court found that the debt was nondischargeable because the landlord had committed actual fraud. *Id.* One of the issues on appeal was whether the claim for treble damages was also nondischargeable under § 523(a)(2)(A). *Id.* at 216, 118 S.Ct. 1212. The Supreme Court held that *"[o]nce it is established that specific money or property has been obtained by fraud, .. 'any debt' arising therefrom is excepted from discharge." Id.* at 218, 118 S.Ct. 1212. In other words, as long as the creditor can prove that the debtor fraudulently took something of value, such as money, property, or services, from the creditor, then any damages resulting from that fraud are nondischargeable under section 523(a)(2)(A).

However, in her response brief, the Creditor in the instant case misinterprets the holding in *Cohen* and uses the case to support her theory that § 523(a)(2)(A) applies to *any debt* that is incurred by *any type of fraudulent conduct.* (Appellee Resp. Br. at 5.) The Creditor claims that *Cohen* stands for the proposition that "§ 523(a)(2)(A) bars the discharge of *all liability* arising from fraud." *Id.* (emphasis added). Although, the Supreme Court uses these specific words in its opinion, the Creditor ignores the context in which the statement was made. In *Cohen,* the Supreme Court had already determined that the debtor had fraudulently obtained *money* from his tenants; thus, the remaining issue was whether the claim for treble damages was also nondischargeable under § 523(a)(2)(A).

In contrast to *Cohen,* the Debtor in the instant case did not obtain anything of value from the Creditor; instead, the judgment was based solely on a claim for emotional loss resulting from the Debtor's misrepresentations. Specifically, in her Complaint, the Creditor lists the following as her damages:

(a) Her previous faith in her fellow human beings has been destroyed;

(b) She has, for the first time in her life, experienced paranoid feelings, and, specifically, is constantly concerned that she is being followed;

(c) She has felt betrayed, abandoned and victimized;

(d) Her temporary feeling that she could become a normal person again, despite the injuries sustained in the Accident, has been ridiculed and destroyed;

(e) Her pre-existing depression has worsened considerably; and [ ]

(f) Her relationship with her husband has markedly deteriorated, leading to a separation between them, after six year of continuously living together[.]

(Pl.Comp.¶ 62.)

The above damages are entirely emotional in nature and do not constitute money, property or services that the Debtor fraudulently acquired from the Creditor as a result of her fraud.

The Supreme Court affirms this theory again in a footnote in *Grogan v. Garner,* 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991), a case in which the debtor defrauded the creditors in connection with the sale of corporate securities. *Id.* at 281, 111 S.Ct. 654. Although the main issue in *Grogan* addressed the standard of proof required by the plaintiff to prove fraud under § 523(a)(2)(A), the Supreme Court explains in a footnote that "[a]rguably, fraud judgments in cases in which the defendant *did not obtain money, property, or services from the plaintiffs* and those judgments that include punitive damages

awards are more appropriately governed by § 523(a)(6)." *Id.* at 282, 111 S.Ct. 654. (citing *In re Rubin,* 875 F.2d 755, 758 n. 1 (9th Cir.1989)(explaining that "[t]he paradigmatic case for § 523(a)(2)(A) seems to arise when a debtor lies to a creditor to obtain a loan and the creditor seeks repayment" and "[t]he paradigmatic case for § 523(a)(6), by contrast, seems to arise when a debtor intentionally injures a creditor and the creditor seeks to make nondischargeable a judgment that he has won in a state court tort action."))(emphasis added) (citations omitted).

In the instant case, the Debtor did not receive any money, property, or services from the Creditor as a result of the Debtor's misrepresentations. Instead, the Creditor received a state court judgment against the Debtor for emotional loss sustained by the Creditor as a result of the Debtor's tortious conduct. In light of the above case law, it would seem that section 523(a)(6), which excepts from discharge debts incurred by "willful and malicious injury", is the more appropriate subsection of section 523 to apply to the instant case. However, as the Bankruptcy Court has already analyzed this case under section 523(a)(6) and accurately found that the plaintiff did not meet the required elements under that section, this court refrains from re-analyzing this case under that section of the statute.

In her response brief, the Creditor cites the following language from *Grogan v. Garner,* 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991), in support of her argument that § 523(a)(2)(A) applies to her judgment: "[A] creditor's intent in recovering full payment of debts in these categories out weighs the debtor[']s interest in a complete fresh start. Further, it is unlikely that Congress would have favored the interest in giving perpetrators of fraud a fresh start over the interest in protecting

victims of fraud." (Appellee Resp. Br. at 5 (citing *Grogan,* 498 U.S. at 287, 111 S.Ct. 654)). However, once again, the Creditor uses language from a Supreme Court case without acknowledging that the facts of the Supreme Court case are clearly distinguishable from the instant case. As stated above, the *Grogan* case addresses the type of fraud that 523(a)(2)(A) was intended to cover—*the fraudulent acquisition of money or property by the debtor from the creditor.* In contrast, the instant case addresses emotional loss, not pecuniary loss, caused by the Debtor's misrepresentations.

Nonetheless, the Creditor claims that § 523(a)(2)(A) can also apply to factual situations in which "no monies whatsoever [are] transferred directly from the creditor to the debtor." (Appellee Resp. Br. at 5.) The Creditor cites *In re Pleasants,* 219 F.3d 372 (4th Cir.2000) to support this argument. However, the Creditor again takes the holding of a case and uses it to support her claim without looking to the factual context of the case. In *In re Pleasants,* the debtor had fraudulently induced the creditors to hire him as the architect for their home, even though the debtor was in fact not a licensed architect. Due to the debtor's fraud, the creditors incurred over $1,200,000 damages to their new home. The debtor-architect filed for bankruptcy and claimed that § 523(a)(2)(A) did not except the judgment from discharge because the creditors had not transferred any of the fraudulently acquired money directly to the debtor, but instead, had transferred it to the third parties who actually did the work on the house. The Fourth Circuit held that § 523(a)(2)(A) did apply and that "the language [of § 523(a)(2)(A)] is broad enough to encompass a situation in which no portion of the creditor's claim was literally transferred to the fraudulent debtor." *Id.* at 375.

The Creditor in the instant case interprets this language to mean that a creditor does not have to prove that she lost money, property, or services as a result of the debtor's misrepresentations. However, the Creditor ignores the fact that, in *In re Pleasants,* the creditors had lost "property" as a result of the fraud, even though the creditors had not transferred money directly to the debtor. In contrast, the Creditor in this case did not transfer anything of value to the Debtor or to anyone else as a result of the Debtor's misrepresentations.

■■■ This court has considered whether the loss of the Creditor's original state court claim against Baucom, which was based on her alleged injuries from the automobile accident, could be considered a loss of "property" to the Creditor. However, to prevail under this theory, the court would have to assume that the Creditor would have won her original case but for the Debtor's fraudulent conduct. Because it is impossible to determine with any degree of certainty whether the Creditor would have won her case absent the Debtor's misrepresentations, this court refuses to assume that the Creditor lost money simply because she lost a claim that may not have been valid in the first place. Thus, this court finds that the loss of the original state court judgment cannot be considered a loss of "property" under § 523(a)(2)(A).

The Creditor also cites *Archer v. Warner,* 538 U.S. 314, 123 S.Ct. 1462, 155 L.Ed.2d 454 (2003), for the proposition that "damages as compensation for emotion distress/personal injury which are as a result of fraud are nondischargeable under § 523(a)(2)(A)." (Appellee Resp. Br. at 5.) Yet, once again, the Creditor ignores the fact that the original fraud in *Archer* dealt with the fraudulent acquisition of money from the creditors by the debtors. In *Archer,* the debtors sold a company to the creditors, and the creditors sued the debtors for fraud in connection with the sale. The parties settled the lawsuit and included a provision in the settlement agreement that the debtors would pay the creditors "$300,000.00 less legal and accounting expenses . . . as compensation for emotional distress/personal injury type damages." However, when the debtors failed to make payments under the settlement agreement and filed for bankruptcy, the creditors claimed that the debt was nondischargeable under § 523(a)(2)(A). The issue was whether the settlement agreement had worked as a novation for the original debt for money obtained by fraud, hence negating the fraud claim. The Supreme Court held that the entire settlement debt was nondischargeable under § 523(a)(2)(A), even though the parties had signed a settlement agreement.

The Creditor in the instant case argues that this case stands for the holding that § 523(a)(2)(A) applies to *any debt* for emotional distress/personal injury claims that are obtained by *any type of fraud.* However, the Creditor misinterprets *Archer* in the same way that she misinterprets *Cohen supra.* The *Cohen* court stated that *"[o]nce is it established that specific money or property has been obtained by fraud, . . 'any debt' arising therefrom is excepted from discharge." Cohen,* 523 U.S. at 218, 118 S.Ct. 1212. As long as the creditor can prove that the debtor fraudulently took something of value, such as money, property, or services from the creditor, then any damages resulting from that fraud are non-dischargeable under section 523(a)(2)(A). In *Archer,* the creditors had already established that the debtors had fraudulently received money from the creditors as a result of the sale of the company. Thus, the type of fraud contemplated in § 523(a)(2)(A) had occurred, and

the creditors were entitled to any damages resulting from such fraud, including damages for emotional distress and personal injury. In the instant case, the Creditor is unable to establish that any property was taken from her by the Debtor; hence, § 523(a)(2)(A) is inapplicable and the judgment based on emotional loss is dischargeable.

In *In re Bruner*, 43 B.R. 143 (Bankr. E.D.Mo.1984), the court considered the issue of whether a state court judgment for seduction and breach of promise to marry would be dischargeable under § 523(a)(2)(A). The creditor was a previously chaste woman who submitted to sexual relations with the debtor after the debtor fraudulently represented to the creditor that they would marry and that he would not have sexual relations with other women. The state court found that the debtor had fraudulently seduced the woman and awarded a judgment in the creditor's favor. The debtor subsequently filed for bankruptcy. Although the judgment was not yet final because the creditor had appealed the decision, the bankruptcy court held that if the state court judgment was upheld on appeal, the judgment would be dischargeable because section 523(a)(2)(A) was inapplicable to this particular type of fraud. *Id.* at 146.

The court explains that "for a debt fraudulently incurred to be non-dischargeable under [§ 523(a)(2)(A)], it must be a debt incurred 'for obtaining money, property, or services, or an extension, renewal, or refinance of credit.'" *Id.* (citing COLLIER ON BANKRUPTCY ¶ 523.08[1] (15th ed., vol.III)). The court concluded that the "[d]efendant obtained neither money, property, services, nor any form of extension, renewal, or refinance of credit from [the] plaintiff and, thus subsection (a)(2)(A) of section 523 of the Code [was] inapplicable." *Id.* Additionally, the court stated:

"True, Defendant induced Plaintiff to have sexual relations with him under knowingly false pretenses but Plaintiff's sexual favors do not come within the categories of 'property' or 'services' under the foregoing subsection." *Id.*

Similarly, in the instant case, the Debtor did not receive any money, property, services, nor any form of extension, renewal, or refinance of credit from the Creditor as a result of the Debtor's fraud. Instead, the Creditor was induced to participate in activities in which she may not have participated without the Debtor's encouragement. Although this fraud may have been an invasion of privacy that caused great emotional distress to the Creditor, the Debtor did not obtain any "property" from the Creditor as a result of the misrepresentations. Therefore, it is the conclusion of this court that § 523(a)(2)(A) is inapplicable to this case. Hence, the entire North Carolina judgment is dischargeable.

## IV. Conclusion

The court finds that the bankruptcy judge erred in determining that § 523(a)(2)(A) applies to the judgment awarded to Nunnery by the North Carolina state court. Accordingly, the ruling of the bankruptcy judge that the debt is nondischargeable is **REVERSED**. This case is **REMANDED** to the United States Bankruptcy Court for the Eastern District of Virginia for any further proceedings necessary therein.

The Clerk is **REQUESTED** to send a copy of this Order to counsel of record.

**IT IS SO ORDERED.**