In re John Leonard LEVINE, Chapter 7 Debtor.

Elizabeth Hoit–Thetford and Richard R. Thetford, Plaintiffs,

v.

John Leonard Levine, d/b/a Savannah River Enterprises, Defendant.

Bankruptcy No. 03–40300–DOT. Adversary No. 04–03039–DOT.

United States Bankruptcy Court, E.D. Virginia, Richmond Division.

Jan. 13, 2005.

Richard O. Gates, Chesterfield, VA, for Debtor.

### *MEMORANDUM OPINION*

DOUGLAS O. TICE, JR., Chief Judge.

Trial on plaintiffs' complaint to determine dischargeability of debt pursuant to 11 U.S.C. § 523(a)(2)(A) was held October 7, 2004. At the conclusion of trial, the court ruled from the bench that debtor/defendant had committed fraud and that his

indebtedness to plaintiffs attributable to the fraud would be excepted from discharge. The court took under advisement the amount of the nondischargeable debt and requested the parties to submit proposed findings of fact and conclusions of law.

For reasons stated in this opinion, the court finds that debtor is indebted to plaintiffs in the amount of $176,616.76, and this sum is excepted from debtor's discharge in bankruptcy.

*Findings of Fact.*

In 1998, debtor operated a construction business in Savannah, Georgia, in which he contracted to renovate homes. Plaintiffs planned to renovate their home located in Savannah at 101 E. 31st Street. After checking debtor's background at the Better Business Bureau and finding no adverse information, plaintiffs entered into a contract with debtor whereby debtor was to renovate and repair plaintiffs' home for a consideration in the amount of $100,000.00. Pl.Ex. 2. The date of the contract was August 10, 1998. On that date the parties also entered into a supplemental agreement containing the specifications for the project. Pl.Ex. 3. Both the contract and specifications required for labor and material costs to be paid by debtor.

Debtor obtained appropriate building permits from the City of Savannah. The first permit was issued on August 19, 1998, in the amount of $6,000.00 for interior demolition. The second permit was issued on September 11, 1998, in the amount of $45,000.00 for remodeling, sheetrock, wiring, plumbing, roof work, paint, HVAC, and floors. The sum of the value of these two permits as reported in the permit applications was significantly less than the contract price for the project.

Debtor began work on the project, but his performance was poor and not up to reasonable industry standards. In addition, he failed to fully pay for labor and materials as he was obligated to do under the contract.

During the course of the project, plaintiffs paid debtor $91,285.00 towards its completion. Despite these payments, project employees complained of debtor's nonpayment of their wages, and several suppliers ceased providing materials for the project because of debtor's bounced checks. Further, several craftsmen refused to continue work until they were paid for their services.

In addition to the $91,285.00 paid to debtor while debtor was working on the project, plaintiffs spent an additional $12,018.86 for labor costs related to their remodeling. Further, during this time, plaintiffs spent an additional $30,506.81 for supplies. Thus plaintiffs spent a total of $133,810.67 on the project during the time debtor was on the job.

Debtor stopped working on the project in April 1999 when the plaintiffs began hiring their own supervisor and employees. At the time debtor left the project, plaintiffs' home was not habitable.

After debtor left the project, plaintiffs paid an additional $88,654.66 in labor costs related to their home renovation plus $16,005.10 for materials. These expenses were necessary so that plaintiffs could obtain a certificate of occupancy. There remains an additional $25,285.00 of renovation expenses that must be incurred by plaintiffs.

Plaintiffs sued debtor in a Georgia Superior Court where they obtained a default judgment in the amount of $157,277.26 plus an award of attorney fees in the amount of $12,861.33.

In summary, plaintiffs have demonstrated the following damages:

| | |
|---|---:|
| To debtor directly | $ 91,285.00 |
| Supplies while debtor on job | 30,506.81 |
| Direct labor | 12,018.86 |
| Additional labor | 88,654.66 |
| Additional supplies | 16,005.10 |
| Estimated additional expenses | 25,285.00 |
| Attorney fees in state court | 12,861.33 |
| | $276,616.76 |

Additional facts are stated below.

*Discussion and Conclusions of Law.*

A debt may be excepted from the discharge of § 727(a) on grounds of fraud pursuant to Bankruptcy Code § 523(a)(2)(A), which provides in part:

(a) A discharge under section 727 ... of this title does not discharge an individual debtor from any debt—

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition.

■ In order to prevail in a claim under § 523(a)(2)(A), the plaintiff must establish:

(1) that the debtor made misrepresentation or committed other fraud;

(2) that at the time the debtor knew the conduct was fraudulent;

(3) that the debtor's conduct was with the *intention and purpose* of deceiving or defrauding the creditor;

(4) that the creditor relied on the debtor's representations or other fraud; and

(5) that the creditor sustained loss and damage as the proximate result of the representations or fraud.

*Western Union Corp. v. Ketaner (In re Ketaner)*, 154 B.R. 459, 464–465 (Bankr. E.D.Va.1992); *Kendrick v. Pleasants (In re Pleasants)*, 231 B.R. 893, 897 (Bankr. E.D.Va.1999), *aff'd,* 219 F.3d 372 (4th Cir. 2000); *Marunaka Dainichi Co. Ltd. v. Yamada (In re Yamada)*, 197 B.R. 37 (Bankr. E.D.Va.1996). A creditor bringing an action under § 523(a)(2)(A) must prove each element by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 291, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991).

■ At trial, plaintiffs presented persuasive evidence that substantial damages were caused by debtor in the performance of a contract to renovate their home in Savannah, Georgia. When debtor left the job in April 1999, plaintiffs' home was in a devastated condition with several aspects of construction either incomplete or done in a haphazard manner. According to the evidence, half of the first floor of the house had no drywall, and the other half had poorly installed ("bulging") drywall; some drywall had been installed in places where plumbing had not been completed; there were holes in the floors; electrical wiring was not up to code; there were electrical wires hanging loose; heating and air conditioning vents were misaligned. One of debtor's carpenters, who testified at trial, described the quality of debtor's work as "horrible." Plaintiffs' damages included their cost to remedy the problems created by debtor and to complete their renovation project. In addition, they were required to pay for work and materials that should have been part of the contract; in some instances they had to pay for items for which debtor had previously been paid.

Debtor testified at trial about his work on plaintiffs' contract and represented in a general way that he had performed in a competent manner. However, he presented no specific evidence concerning the work or its value. Debtor's counsel argued that debtor had performed a substantial amount of the contract work and might have completed the job if he had been given the chance. On brief, debtor argues

that the evidence is unclear as to whether some of the amounts expended by plaintiffs after debtor left the job represented work outside the contract and that therefore those damages should not be charged to him. Debtor's position on the amount of damages is discussed further below.

The court is satisfied from the evidence that debtor committed fraud in misrepresenting his ability to perform under the parties' construction contract, that debtor requested payments on the contract, falsely representing his use of the funds, and misrepresented that he had paid his laborers and materialmen. The evidence makes reasonably clear that debtor had little intent or ability to perform the contract.

At trial, debtor denied that he intended to damage plaintiffs by fraudulent conduct. His denial in the face of the evidence here is not an adequate defense. Direct evidence of his intent is not necessary to establish fraud because a debtor's intent to defraud may be demonstrated through "an examination of surrounding circumstances." *In re Pleasants*, 231 B.R. at 898; *In re Ketaner*, 154 B.R. at 465. Here, plaintiffs have established fraudulent intent by debtor's actions, and "debtor cannot overcome [an inference of intent to defraud] with an unsupported assertion of honest intent." *In re Yamada*, 197 B.R. at 40 (citing *In re Ketaner*, 154 B.R. at 465). Debtor either knew the representations were false or he was recklessly indifferent as to their truth. Plaintiffs justifiably relied on debtor's representations and sustained significant damages as a result. *See In re Pleasants*, 231 B.R. at 898–99 (finding claim non-dischargeable under exception for actual fraud where debtor, misrepresenting himself as an architect, undertook unsuccessful home renovation, causing damages to plaintiff's home).

## DAMAGES

It remains for the court to determine the plaintiffs' damages that were "obtained by" debtor's fraud. 11 U.S.C. § 523(a)(2)(A).

Plaintiffs' trial testimony was that all the damages incurred by them were caused by debtor's incompetent and fraudulent performance of the home renovation project. These damages, in the total amount of $276,616.76, are listed in the court's findings of facts. However, plaintiffs are asking the court to award nondischargeable damages in the reduced amount of $176,616.76, so as to give debtor credit for the contract amount of $100,000.00. In their brief, plaintiffs' counsel states this credit "should assuage any concerns of the Debtor that breach of contract damages are being deemed nondischargeable." Pl. Findings of Fact and Conclusions of Law, p. 10.

Debtor has argued that the evidence does not clearly show that all of plaintiffs' expenditures were for work that was included in the contract. He also argues that he performed substantial work in connection with the contract, that some of this work was satisfactory, and that credit should be given for this work. It is true that plaintiffs' documentary evidence does not provide a basis for the court to make a precise determination of the value of the work satisfactorily performed by debtor or to make any finding as to whether all of plaintiffs' expenditures were for items that were included in the contract. Also, there is evidence that supports debtor's argument to the extent that during the same time period, plaintiffs were making renovations that were not part of the parties' contract.

Of course, debtor has produced no evidence on these questions other than his general, unsupported testimony. In light of the plaintiffs' evidence, there was some

shifting of the burden to debtor to produce something, other than argument, to show the court why he should not be held responsible for all plaintiffs' damages. Thus, as a matter of evidence, plaintiffs have established that debtor may be charged with all damages proven at trial.

■ The case law lends little support to debtor's position on damages. In *Cohen v. de la Cruz,* the Supreme Court clarified the scope of nondischargeable damages under § 523(a)(2)(A), broadly holding:

> [T]he historical pedigree of the fraud exception, and the general policy underlying the exceptions to discharge all support our conclusion that "any debt ... for money, property, services, or ... credit, to the extent obtained by" fraud encompasses *any liability* arising from money, property, etc., that is fraudulently obtained, including treble damages, attorney's fees, and other relief that may exceed the value obtained by the debtor.

523 U.S. 213, 223, 118 S.Ct. 1212, 140 L.Ed.2d 341 (1998) (emphasis added).

As stated, plaintiffs ask for a broad award of damages to include all expenditures made by them on their house, reduced by the gross amount of the contract. They argue that the sums expended stem directly from debtor's misrepresentations regarding his ability to perform the project, his misrepresentations regarding use of the project funds, and his misrepresentations regarding the general status of the project.

The facts of this case are comparable to those in *Pleasants,* in which the debtor, after misrepresenting himself as an architect, entered into a home renovation contract with plaintiffs. The plaintiffs suffered damages because debtor's "lack of architectural credentials resulted in a project plagued with structural defects and code violations" and "caused the endless delays that resulted in still more dam-

ages." 219 F.3d 372, 375 (4th Cir.2000). In *Pleasants,* all of plaintiffs' damages were based on sums they paid to third parties for the purpose of correcting and completing the project. The Fourth Circuit affirmed the bankruptcy court's holding that all of these damages were excepted from discharge as having been "obtained by" debtor's fraud. *Id.* at 376; *see* 11 U.S.C. § 523(a)(2)(A). Plaintiffs' nondischargeable damages included "the cost of repairing Pleasants's inadequate work and completing the project, living expenses incurred by the Kendricks' family when they were forced out of the house for over three years, certain attorneys' fees and punitive damages as agreed to by the parties." *In re Pleasants,* 231 B.R. at 898, n. 11; *see Econ. Exterminators of Savannah, Inc. v. Wheeler,* 259 Ga.App. 192, 576 S.E.2d 601, 603 (2003) (finding damages for contractor's fraud included "the total cost of repairing their ... house, ... which includes not only construction costs, but also expenses associated with the loss of the use of their house during the potentially lengthy repair period").

There is also the issue of plaintiffs' attorney fees incurred in connection with their Georgia suit against debtor. There can be little doubt under the Supreme Court's decision in *Cohen* that attorney fees may be an element of nondischargeable damages under § 523(a)(2)(A). 523 U.S. at 223, 118 S.Ct. 1212; *see, e.g., Catercorp, Inc. v. Henicheck (In re Henicheck),* 186 B.R. 211 (Bankr.E.D.Va.1995) (holding attorney fees incurred by creditor in state court ... were excepted from discharge); *see also* Ga.Code Ann. § 13-6-11 (2004) ("Where the defendant has acted in bad faith, has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense" attorneys' fees may be allowed as part of the plaintiff's dam-

ages.); *Performance Mech. Co. v. Heat Transfer Control, Inc.*, 247 Ga.App. 436, 543 S.E.2d 808 (2000) (finding fraud or bad faith of the defendant in the transaction out of which the cause of action arose as available grounds for award of attorneys' fees).

In summary, the court finds that plaintiffs are entitled to recover damages from debtor in the amount requested, $176,616.76. The reduction of their actual expenses by the contract price of $100,000.00 makes up sufficiently for any of plaintiffs' expenditures that may not have been fairly attributable to debtor's fraud.

A separate order will be entered granting plaintiffs a nondischargeable judgment in the amount of $176,616.76, pursuant to § 523(a)(2)(A) of the Bankruptcy Code.