COHEN *v.* DE LA CRUZ ET AL.

No. 96–1923.   Argued January 20, 1998—Decided March 24, 1998

214

O'CONNOR, J., delivered the opinion for a unanimous Court.

*Donald B. Ayer* argued the cause for petitioner. With him on the briefs were *James E. Anklam, Howard J. Bashman,* and *John Francis Gough.*

*Gregory G. Diebold* argued the cause for respondents. With him on the brief was *Brian Wolfman.*

*Jeffrey A. Lamken* argued the cause for the United States as *amicus curiae* urging affirmance. With him on the brief were *Solicitor General Waxman, Assistant Attorney General Hunger, Deputy Solicitor General Kneedler, William Kanter,* and *Alisa B. Klein.*

JUSTICE O'CONNOR delivered the opinion of the Court.

Section 523(a)(2)(A) of the Bankruptcy Code (Code) excepts from discharge in bankruptcy "any debt . . . for money,

property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by . . . false pretenses, a false representation, or actual fraud." 11 U. S. C. § 523(a)(2)(A). The issue in this case is whether § 523(a)(2)(A) bars the discharge of treble damages awarded on account of the debtor's fraudulent acquisition of "money, property, services, or . . . credit," or whether the exception only encompasses the value of the "money, property, services, or . . . credit" the debtor obtains through fraud. We hold that § 523(a)(2)(A) prevents the discharge of all liability arising from fraud, and that an award of treble damages therefore falls within the scope of the exception.

I

Petitioner owned several residential properties in and around Hoboken, New Jersey, one of which was subject to a local rent control ordinance. In 1989, the Hoboken Rent Control Administrator determined that petitioner had been charging rents above the levels permitted by the ordinance, and ordered him to refund to the affected tenants, who are respondents in this Court, $31,382.50 in excess rents charged. Petitioner did not comply with the order.

Petitioner subsequently filed for relief under Chapter 7 of the Bankruptcy Code, seeking to discharge his debts. The tenants filed an adversary proceeding against petitioner in the Bankruptcy Court, arguing that the debt owed to them arose from rent payments obtained by "actual fraud" and that the debt was therefore nondischargeable under 11 U. S. C. § 523(a)(2)(A). They also sought treble damages and attorney's fees and costs pursuant to the New Jersey Consumer Fraud Act. See N. J. Stat. Ann. §§ 56:8–2, 56:8–19 (West 1989).

Following a bench trial, the Bankruptcy Court ruled in the tenants' favor. *In re Cohen*, 185 B. R. 171 (1994); 185 B. R. 180 (1995). The court found that petitioner had committed "actual fraud" within the meaning of 11 U. S. C. § 523(a)(2)(A) and that his conduct amounted to an "unconscionable com-

mercial practice" under the New Jersey Consumer Fraud Act. As a result, the court awarded the tenants treble damages totaling $94,147.50, plus reasonable attorney's fees and costs. Noting that courts had reached conflicting conclusions on whether § 523(a)(2)(A) excepts from discharge punitive damages (such as the treble damages at issue here), the Bankruptcy Court sided with those decisions holding that § 523(a)(2)(A) encompasses all obligations arising out of fraudulent conduct, including both punitive and compensatory damages.* 185 B. R., at 188–189. The District Court affirmed. 191 B. R. 599 (1996).

The Court of Appeals for the Third Circuit affirmed in a divided opinion. *In re Cohen*, 106 F. 3d 52 (1997). After accepting the finding of the Bankruptcy Court that petitioner had committed fraud under § 523(a)(2)(A) and the New Jersey Consumer Fraud Act, the Court of Appeals turned to whether the treble damages portion of petitioner's liability represents a "debt . . . for money, property, services, or . . . credit, to the extent obtained by . . . actual fraud." § 523(a)(2)(A). The court observed that the term "debt," defined in the Code as a "right to payment," § 101(5)(A), plainly encompasses all liability for fraud, whether in the form of punitive or compensatory damages. And the phrase "to the extent obtained by," the court reasoned, modifies "money, property, services, or . . . credit," and therefore distinguishes not between compensatory and punitive damages awarded for fraud but instead between money or property obtained through fraudulent means and money or property obtained through nonfraudulent means. *Id.*, at 57. Here, the court concluded, the entire award of $94,147.50 (plus attorney's fees and costs) resulted from money obtained

---

*The Bankruptcy Court characterized an award of treble damages under the New Jersey Consumer Fraud Act as punitive in nature, see 185 B. R., at 188, and the Court of Appeals assumed as much without deciding the question, *In re Cohen*, 106 F. 3d 52, 55, n. 2 (CA3 1997). That issue does not affect our analysis, and we have no occasion to revisit it here.

through fraud and is therefore nondischargeable. *Id.*, at 59. Judge Greenberg dissented, concluding that treble damages are not encompassed by § 523(a)(2)(A) because they "do not reflect money, property, or services the debtor 'obtained.'" *Id.*, at 60.

As the Court of Appeals recognized, *id.*, at 56, its interpretation of § 523(a)(2)(A) is in accord with that of the Eleventh Circuit but in conflict with that of the Ninth Circuit. Compare *In re St. Laurent*, 991 F. 2d 672, 677–681 (CA11 1993), with *In re Levy*, 951 F. 2d 196, 198–199 (CA9 1991). Bankruptcy courts have likewise reached differing conclusions on whether § 523(a)(2)(A) prevents the discharge in bankruptcy of punitive damages awarded on account of fraud. Compare *In re George*, 205 B. R. 679, 682 (Bkrtcy. Ct. Conn. 1997) (punitive damages not dischargeable); *In re Spicer*, 155 B. R. 795, 801 (Bkrtcy. Ct. DC) (same), aff'd, 57 F. 3d 1152 (CADC 1995), cert. denied, 516 U. S. 1043 (1996); *In re Winters*, 159 B. R. 789, 790 (Bkrtcy. Ct. ED Ky. 1993) (same), with *In re Bozzano*, 173 B. R. 990, 997–999 (Bkrtcy. Ct. MDNC 1994) (punitive damages dischargeable); *In re Sciscoe*, 164 B. R. 86, 89 (Bkrtcy. Ct. SD Ind. 1993) (same); *In re Brady*, 154 B. R. 82, 85 (Bkrtcy. Ct. WD Mo. 1993) (same). We noted the issue without resolving it in *Grogan* v. *Garner*, 498 U. S. 279, 282, n. 2 (1991). We granted certiorari to address the conflict in the lower courts, 521 U. S. 1152 (1997), and we now affirm.

## II

The Bankruptcy Code has long prohibited debtors from discharging liabilities incurred on account of their fraud, embodying a basic policy animating the Code of affording relief only to an "honest but unfortunate debtor." *Grogan* v. *Garner*, 498 U. S., at 287 (internal quotation marks omitted); see *id.*, at 290; *Brown* v. *Felsen*, 442 U. S. 127, 138 (1979). Section 523(a)(2)(A) continues the tradition, excepting from discharge "any debt . . . for money, property, serv-

ices, or an extension, renewal, or refinancing of credit, to the extent obtained by . . . false pretenses, a false representation, or actual fraud."

The most straightforward reading of § 523(a)(2)(A) is that it prevents discharge of "any debt" respecting "money, property, services, or . . . credit" that the debtor has fraudulently obtained, including treble damages assessed on account of the fraud. See *Field* v. *Mans*, 516 U. S. 59, 61, 64 (1995) (describing § 523(a)(2)(A) as barring discharge of debts "resulting from" or "traceable to" fraud). First, an obligation to pay treble damages satisfies the threshold condition that it constitute a "debt." A "debt" is defined in the Code as "liability on a claim," § 101(12), a "claim" is defined in turn as a "right to payment," § 101(5)(A), and a "right to payment," we have said, "is nothing more nor less than an enforceable obligation." *Pennsylvania Dept. of Public Welfare* v. *Davenport*, 495 U. S. 552, 559 (1990). Those definitions "reflec[t] Congress' broad . . . view of the class of obligations that qualify as a 'claim' giving rise to a 'debt,'" *id.*, at 558, and they plainly encompass treble damages: An award of treble damages is an "enforceable obligation" of the debtor, and the creditor has a corresponding "right to payment."

Moreover, the phrase "to the extent obtained by" in § 523(a)(2)(A), as the Court of Appeals recognized, does not impose any limitation on the extent to which "any debt" arising from fraud is excepted from discharge. "[T]o the extent obtained by" modifies "money, property, services, or . . . credit"—not "any debt"—so that the exception encompasses "any debt . . . for money, property, services, or . . . credit, to *the extent [that the money, property, services, or . . . credit is]* obtained by" fraud. The phrase thereby makes clear that the share of money, property, etc., that is obtained by fraud gives rise to a nondischargeable debt. Once it is established that specific money or property has been obtained by fraud, however, "any debt" arising therefrom is excepted from dis-

charge. In this case, petitioner received rent payments from respondents for a number of years, of which $31,382.50 was obtained by fraud. His full liability traceable to that sum—$94,147.50 plus attorney's fees and costs—thus falls within the exception.

Petitioner does not dispute that the term "debt" encompasses treble damages or that the phrase "to the extent obtained by" modifies "money, property, services, or . . . credit." He nonetheless contends that "any debt . . . for money, property, services, or . . . credit, to the extent obtained by" fraud does not include treble damages awarded in a fraud action. Petitioner submits that § 523(a)(2)(A) excepts from discharge only the portion of the damages award in a fraud action corresponding to the *value* of the "money, property, services, or . . . credit" the debtor obtained by fraud. The essential premise of petitioner's argument is that a "debt for" money, property, or services obtained by fraud is necessarily limited to the value of the money, property, or services received by the debtor. Petitioner, in this sense, interprets "debt for"—or alternatively, "liability on a claim for"—in § 523(a)(2)(A) to mean "liability on a claim to obtain," *i. e.,* "liability on a claim to obtain the money, property, services, or credit obtained by fraud," thus imposing a restitutionary ceiling on the extent to which a debtor's liability for fraud is nondischargeable.

Petitioner's reading of "debt for" in § 523(a)(2)(A), however, is at odds with the meaning of the same phrase in parallel provisions. Section 523(a) defines several categories of liabilities that are excepted from discharge, and the words "debt for" introduce many of them, viz., "debt . . . for a tax or a customs duty . . . with respect to which a return . . . was not filed," § 523(a)(1)(B)(i), "debt . . . for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny," § 523(a)(4), "debt . . . for willful and malicious injury by the debtor to another entity," § 523(a)(6), and "debt . . . for death or personal injury caused by the debtor's op-

eration of a motor vehicle if such operation was unlawful because the debtor was intoxicated," § 523(a)(9). None of these use "debt for" in the restitutionary sense of "liability on a claim to obtain"; it makes little sense to speak of "liability on a claim to obtain willful and malicious injury" or "liability on a claim to obtain fraud or defalcation." Instead, "debt for" is used throughout to mean "debt as a result of," "debt with respect to," "debt by reason of," and the like, see American Heritage Dictionary 709 (3d ed. 1992); Black's Law Dictionary 644 (6th ed. 1990), connoting broadly any liability arising from the specified object, see *Davenport, supra,* at 563 (characterizing § 523(a)(7), which excepts from discharge certain debts "for a fine, penalty, or forfeiture" as encompassing "debts arising from a 'fine, penalty, or forfeiture' ").

Because each use of "debt for" in § 523(a) serves the identical function of introducing a category of nondischargeable debt, the presumption that equivalent words have equivalent meaning when repeated in the same statute, *e. g., Ratzlaf v. United States,* 510 U. S. 135, 143 (1994), has particular resonance here. And contrary to petitioner's submission, it is of no moment that "debt for" in § 523(a)(2)(A) has as its immediate object a commodity (money, property, etc.), but in some of the other exceptions has as its immediate object a description of misconduct, *e. g.,* § 523(a)(4) ("debt for fraud or defalcation [by a] fiduciary"). Section 523(a)(2)(A) also describes misconduct ("false pretenses, a false representation, or actual fraud"), even if it first specifies the result of that conduct (money, property, etc., obtained). The exception in § 523(a)(9) is framed in the same way, initially specifying an outcome as the immediate object of "debt for" ("death or personal injury"), and subsequently describing the misconduct giving rise to that outcome ("operation of a motor vehicle [while] intoxicated"). It is clear that "debt for" in that provision means "debt arising from" or "debt on account of," and it follows that "debt for" has the same meaning in § 523(a)(2)(A). When construed in the context of the statute

as a whole, then, § 523(a)(2)(A) is best read to prohibit the discharge of any liability arising from a debtor's fraudulent acquisition of money, property, etc., including an award of treble damages for the fraud.

The history of the fraud exception reinforces our reading of § 523(a)(2)(A). The Bankruptcy Act of 1898 prohibited discharge of "judgments in actions for frauds, or obtaining property by false pretenses or false representations," § 17, 30 Stat. 550, and an award of punitive damages for fraud plainly fits in the category of "judgments in actions for fraud." The exception was broadened in 1903 to include all "liabilities for obtaining property by false pretenses or false representations," § 5, 32 Stat. 798, language that, *a fortiori*, encompasses liability for punitive damages. See *Brown*, 442 U. S., at 138 (interpreting the provision as prohibiting discharge of "all debts arising out of conduct specified" therein); *In re St. Laurent*, 991 F. 2d, at 679 (noting "practice of holding debts for punitive damages nondischargeable" under this exception "if the compensatory damages . . . were themselves nondischargeable"). And the Bankruptcy Act of 1978 enacted a "substantially similar" provision, *Brown*, *supra*, at 129, n. 1, barring discharge of "any debt . . . for obtaining money, property, services, or . . . credit, by . . . false pretenses, a false representation, or actual fraud." 11 U. S. C. § 523(a)(2)(A) (1982 ed.).

As the result of a slight amendment to the language in 1984, referred to in the legislative history only as a "stylistic change," see S. Rep. No. 98–65, p. 80 (1983), § 523(a)(2)(A) now excepts from discharge "any debt . . . for money, property, services, or . . . credit, to the extent obtained by . . . false pretenses, a false representation, or actual fraud." We, however, "will not read the Bankruptcy Code to erode past bankruptcy practice absent a clear indication that Congress intended such a departure," *Davenport*, 495 U. S., at 563, and the change to the language of § 523(a)(2)(A) in 1984 in no way signals an intention to narrow the established

scope of the fraud exception along the lines suggested by petitioner. If, as petitioner contends, Congress wished to limit the exception to that portion of the debtor's liability representing a restitutionary—as opposed to a compensatory or punitive—recovery for fraud, one would expect Congress to have made unmistakably clear its intent to distinguish among theories of recovery in this manner. See, *e. g.,* § 523(a)(7) (barring discharge of debts "for a fine, penalty, or forfeiture payable to . . . a governmental unit," but only if the debt "is not compensation for actual pecuniary loss").

The conclusion that § 523(a)(2)(A) bars the discharge of all liability arising from fraud is further borne out by the implications of petitioner's alternative construction. The various exceptions to discharge in § 523(a) reflect a conclusion on the part of Congress "that the creditors' interest in recovering full payment of debts in these categories outweigh[s] the debtors' interest in a complete fresh start." *Grogan,* 498 U. S., at 287. But if, as petitioner would have it, the fraud exception only barred discharge of the value of any money, property, etc., fraudulently obtained by the debtor, the objective of ensuring full recovery by the creditor would be ill served. Limiting the exception to the value of the money or property fraudulently obtained by the debtor could prevent even a compensatory recovery for losses occasioned by fraud. For instance, if a debtor fraudulently represents that he will use a certain grade of shingles to roof a house and is paid accordingly, the cost of repairing any resulting water damage to the house could far exceed the payment to the debtor to install the shingles. See *In re Church,* 69 B. R. 425, 427 (Bkrtcy. Ct. ND Tex. 1987). The United States, as *amicus curiae,* posits another example along these lines, involving "a debtor who fraudulently represents to aircraft manufacturers that his steel bolts are aircraft quality [and] obtains sales of $5,000" for the bolts, but "the fraud causes a multi-million dollar airplane to crash." Brief for United States as *Amicus Curiae* 21.

As petitioner acknowledges, his gloss on § 523(a)(2)(A) would allow the debtor in those situations to discharge any liability for losses caused by his fraud in excess of the amount he initially received, leaving the creditor far short of being made whole. And the portion of a creditor's recovery that exceeds the value of the money, property, etc., fraudulently obtained by the debtor—and that hence would be dischargeable under petitioner's view—might include compensation not only for losses brought about by fraud but also for attorney's fees and costs of suit associated with establishing fraud. But see § 523(d) (allowing award of attorney's fees and costs to the *debtor* where a creditor requests dischargeability determination under § 523(a)(2) for a consumer debt that is ultimately found to be dischargeable). Those sorts of results would not square with the intent of the fraud exception. As we have observed previously in addressing different issues surrounding the scope of that exception, it is "unlikely that Congress . . . would have favored the interest in giving perpetrators of fraud a fresh start over the interest in protecting victims of fraud." *Grogan, supra,* at 287.

In short, the text of § 523(a)(2)(A), the meaning of parallel provisions in the statute, the historical pedigree of the fraud exception, and the general policy underlying the exceptions to discharge all support our conclusion that "any debt . . . for money, property, services, or . . . credit, to the extent obtained by" fraud encompasses any liability arising from money, property, etc., that is fraudulently obtained, including treble damages, attorney's fees, and other relief that may exceed the value obtained by the debtor. Under New Jersey law, the debt for fraudulently obtaining $31,382.50 in rent payments includes treble damages and attorney's fees and costs, and consequently, petitioner's entire debt of $94,147.50 (plus attorney's fees and costs) is nondischargeable in bankruptcy. Accordingly, we affirm the judgment of the Court of Appeals.

*It is so ordered.*