**In re Bonnie D. BEHN, Debtor.**

**Buffalo Gyn Womenservices, Inc., Plaintiff,**

v.

**Bonnie D. Behn, Defendant.**

**Bankruptcy No. 99–11231 K. Adversary No. AP 99–1165 K.**

United States Bankruptcy Court, W.D. New York.

Feb. 14, 2000.

Glenn E. Murray, The Cornell Mansion, Buffalo, NY, for the Plaintiff.

Denis A. Kitchen, Jr., Williamsville, NY, for Debtor/Defendant.

MICHAEL J. KAPLAN, Chief Judge.

This matter is a fee application resulting from this Court's decision in *In re Behn*, which held certain pre-bankruptcy judgments for contempts of court non-dischargeable under 11 U.S.C. § 523(a)(6). See *Buffalo GYN Womenservices, Inc. v. Behn (In re Behn)*, 242 B.R. 229 (Bankr. W.D.N.Y.1999). In that decision, this writer analogized this case to the circum-

stances often presented under a different dischargeability provision—11 U.S.C. § 523(a)(5)—in which the dischargeability proceeding is essentially a rehash of what had previously been laid to rest in a final, non-reviewable, pre-bankruptcy judicial decree. See *id.* at 240–41.

The Debtor argues that this Court's analogy is inapt. My sense of the argument is that Congress has expressed greater solicitude for holders of alimony, maintenance and support claims than for holders of claims arising out of willful and malicious injury. This is evident, it is argued, in the fact that under 11 U.S.C. § 523(c), holders of § 523(a)(5) claims need not even sue here in order for their claims to be declared non-dischargeable; and so the Court ought not be so solicitous of holders of claims for willful and malicious injury.[1]

It seems to the Court, however, that by compelling a creditor to sue here or forever hold its peace, Congress has placed a burden on those creditors for a debtor's benefit. And that, of itself, is quite a benefit indeed, because the debts that are discharged (absent the timely filing of a dischargeability complaint by the creditor) are debts that involve, if proven, wrongdoing by a debtor over and above mere broken promises—fraud, fiduciary fraud, and willful and malicious injury. And it is extremely common that holders of such debts do not avail themselves of the opportunity to pursue a judgment of nondischargeability on those grounds. Of those who do so avail themselves, the overwhelming majority involve "disputed" alle-

gations of fraud or malice, which is to say that there was no final pre-bankruptcy adjudication thereof. Often there was a pre-bankruptcy tort action that was settled without an admission of fraud. Or a pre-bankruptcy guilty plea to a crime or a violation that does not clearly bespeak an intent to injure. Or the bankruptcy filing came on the eve of summary judgment or default judgment for intentional tort.

Thus it makes perfect sense for Congress to insist that once a debtor seeks a "fresh start," those who believe themselves "victims" of fraud, fiduciary fraud, or willful and malicious injury must either sue them promptly in this forum under § 523 (and not under state law[2]) or be permanently enjoined. Part of the wrongdoing debtor's "fresh start" is to suffer judgment now (if found liable) rather than later, so that there may be prompt focus on paying nondischargeable debts once other debts are discharged.

The language of § 523(c) sweeps broadly enough, however, to include the rare case, like this, where a debtor's actions and state of mind were already fully litigated and adjudicated and laid to rest in a judgment that became final before she filed for relief under the Bankruptcy Code.

Such cases are indeed rare (because bankruptcy is so often a reaction to being sued, rather than a reaction to having suffered a judgment). But they present themselves in some number, and it is typical of that subclass of cases that the debtor is simply trying to raise another obstacle

---

1. Another interpretation of the Debtor's argument is that it is a statute, not an act of the Debtor, that compels the Plaintiff here to commence a dischargeability action, and so the Debtor ought not to be charged with the additional fees of a creditor who was compelled to action by the statute. The following analysis should make it clear, however, that it is not the decision to file bankruptcy in good faith that is the issue here, it is the decision to defend the § 523 complaint. (To some other courts, the mere decision to file bankruptcy may itself trigger additional fee liability. The focus in *Cohen v. De La Cruz*, 523 U.S. 213,

118 S.Ct. 1212, 140 L.Ed.2d 341 (1998) was on making the creditor "whole"; and see *In re Lutgen*, 1999 WL 222605 (W.D.N.Y.), (the district court applied that focus in awarding fees based in a checking-cashing contract between the debtor and a creditor-supermarket).)

2. Though the validity of the underlying claim may lie in state law, the exceptions to discharge are a matter of federal law. See *Grogan v. Garner*, 498 U.S. 279, 283–84, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991).

for the injured person—not necessarily in the decision to file bankruptcy, but rather in the decision to defend the § 523(a)(2), (4), or (6) action. In other words, it is typical that what is occurring in the Bankruptcy Court is, as noted above, a "rehash" of what was previously proven-up by the plaintiff.

This is not to say that there can never be a "good faith" reason to defend a dischargeability action premised in fraud, fiduciary fraud, or willful and malicious injury, if there was a state court adjudication in the plaintiff's favor. There might indeed be serious issue as to whether a state court judgment for defamation, for example, constitutes an adjudication of "willful and malicious injury" for § 523(a)(6) purposes. But where the pre-bankruptcy litigation was full and fair and resulted in an adjudication of common-law "fraud," for example, this Court would be hard-pressed to find any good faith basis for defending a 11 U.S.C. § 523(a)(2) action by arguing that common law "fraud" somehow does not fulfill the Bankruptcy Code definition of "fraud." [3] But most to the point, even where there might be a good faith basis to make the argument, there is no reason to declare that any and all such good faith defenses may be raised completely without fear of suffering liability for one's opponent's attorneys' fees.

The Court need not determine this general proposition today. Rather, there is another reason, not discussed in the earlier decision, why the award of fees is proper. That is because the District Court of this district declared that this Plaintiff was entitled to attorneys' fees as against this Debtor as a matter of the law of contempts of court. Coupled with other decisions, this Court is compelled to its result. Specifically, the United States Supreme Court in *Cohen v. De La Cruz*, examined a state statutory provision for an award of attor-

neys fees for certain types of business conduct. See 523 U.S. 213, 118 S.Ct. 1212, 140 L.Ed.2d 341 (1998). It upheld the bankruptcy court's award of attorneys fees in the § 523 dischargeability action where that award was based on that state statute. *Cohen v. De La Cruz,* therefore, stands for the proposition that where attorneys' fees are available outside bankruptcy as a matter of law, then they are available inside bankruptcy in a dischargeability proceeding as well. See also *In re Lutgen*, 1999 WL 222605.

It is also important to note that in *Cohen v. De La Cruz,* there had been no pre-bankruptcy judgment. It would be nonsensical to interpret *Cohen v. De La Cruz* in a way that would put this Plaintiff in a worse position by having litigated to judgment prior to bankruptcy than would have been the case if this Debtor had filed earlier and the Plaintiff were to be proving-up its case of willful and malicious injury for the first time in the context of the 11 U.S.C. § 523(a)(6) action. It was the Debtor's choice, here, to wait until several years after judgment was rendered against her, to file for relief under the Code. Had she filed before the judgment, the Plaintiff would have had to prove here what it proved in the District Court instead. Often this Court must rule that a debtor waited too long to seek relief here—that the rule of *In re Andrijevic* commands that what might otherwise have been tried (or re-tried) in this Court is beyond this Court's examination. See *Kelleran v. Andrijevic (In re Andrijevic)*, 825 F.2d 692, 695–96 (2d Cir.1987). This must be no less true of attorneys' fees when the pre-petition ruling that they are awardable as a matter of law, was not appealed.

With the nonbankruptcy "law of the case" thus established, it is *Cohen v. De La Cruz* that requires its extension to the subsequent § 523 action. Viewed in this

---

**3.** Prior to the decision in *Grogan v. Garner*, one good faith basis would have existed if the finding of fraud had been by a "preponderance" of the evidence. Many courts had held

that "clear and convincing" evidence was necessary under 11 U.S.C. § 523(a)(2), but *Grogan* taught otherwise.

light, the § 523(a)(6) action here might be viewed as simply another step in seeking damages for the willful and malicious injury. By having chosen to file a voluntary bankruptcy petition, the Debtor put the Plaintiff to the burden of protecting the final judgment it already had from the operation of the Debtor's discharge. A debtor may (and this Debtor did) defend the § 523 action in good faith, but "good faith" is not the point. If the Plaintiff ultimately demonstrates that a "willful and malicious injury" was already established, the § 523 proceeding, commanded by § 523(c), must be viewed as something akin to a proceeding "in aid of" the pre-bankruptcy litigation. But if a debtor succeeds in establishing that the issue she is raising is not a mere "rehash" of what was already decided against her, and is instead grounded in different legal theory, even if not on different facts, then the plaintiff must bear its own fees.

To summarize, there are two propositions to be considered with regard to the possibility of an award of attorneys fees:

■ (1) If allegations are tried and adjudicated here, for the first time, in a § 523 action, attorneys fees must be awarded if a statute (see *Cohen v. De La Cruz*), a contract (see *In re Lutgen*, 1999 WL 222605 (W.D.N.Y.)), or a black letter principle of law that acts in abrogation of the American rule (see, for example, *Chambers v. Nasco* 501 U.S. 32, 45–46, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991)) (dealing with vexatious litigation tactics), so commands. And such fees *might* be awarded if a statute, contract, or black letter principle of law permits, but does not require, such an award.

■ (2) If the underlying claim was tried and adjudicated before bankruptcy and was found to warrant an award of fees because of statute, contract, or black letter principle of law, then the debtor must ask herself whether what she is going to ask the bankruptcy court to decide (by defending the action) is the same thing as what was decided before, albeit under 11 U.S.C. § 523 rather than under non-bankruptcy law. She defends at her own peril because if the court concludes that there is no distinction, she will not be permitted to have foisted on her opponents the cost of demonstrating a second time in a second forum what the substance and nature of the claim and injury actually were. But if the court concludes that she is correct, that she is entitled to a new trial under § 523 because the prior adjudication is not dispositive of the matter of a bankruptcy discharge of the debt, then she will not suffer the award of additional attorneys fees for the part of the litigation here that established her right to a new day in court.[4]

■ All of this being said, the fee application is excessive. Approximately eleven hours were spent on "research" and drafting, at a claimed $200/hr. This Court hardly ever awards fees for researching bankruptcy law because a working knowledge of it is presumed of those who practice here. No novel issues were presented in this case, despite the unusual facts. Of the eleven hours, six would appear to have been reasonable. Of the $3140 sought, only $2140 will be allowed. Also allowed are $150 in costs. The Clerk shall enter an additional money judgment in the amount of $2290.

---

**4.** Thus, a creditor who wishes not to risk having to pay her own attorney over the fight as to whether the debtor is entitled to a new trial, must consider conceding this point, and moving directly to a disposition on the merits of the underlying claim.