**In re Robin L. WIMPEE and Deborah H. Wimpee.**

No. 04–50942.

United States Bankruptcy Court,
W.D. Kentucky,
Paducah Division.

May 11, 2006.

David E. Arvin, Hopkinsville, KY, for Debtors.

## ORDER

THOMAS H. FULTON, Bankruptcy Judge.

THESE CORE PROCEEDINGS[1] come before the Court on the Chapter 13 Trustee's ("Trustee") Motion to Modify Plan, and the Debtors Robin L. Wimpee and Deborah H. Wimpee ("Debtors"), Ob-

jection to Motion to Modify Plan and Motion for Entry of Discharge. The Trustee is seeking to increase the confirmed plan percentage to the Debtors' prepetition unsecured nonpriority creditors from a 35% to 75% payout. The Debtors objected to the Trustee's Motion to Modify the Plan stating that all the payments under their confirmed Chapter 13 plan are now complete, and the Trustee's Motion is untimely. The Debtors also filed a Motion for Entry of Discharge on the basis that they have completed all their payment obligations under their confirmed Chapter 13 plan.[2]

A consolidated hearing on these motions was held on April 19, 2006, at which the Debtor, Deborah H. Wimpee, testified. Based on the statements of counsel, testimony of Mrs. Wimpee, and consideration of the entire record in this case, this court GRANTS the Trustee's Motion to Modify, and DENIES the Debtors' Objection to [Trustee's] Motion to Modify Plan and also their Motion for Entry of Discharge.

## FINDINGS OF FACT

The Debtors sought relief under Chapter 13 by filing their petition on July 2, 2004. On their Schedule A, the Debtors listed two pieces of real property, a house and lot jointly owned by both Debtors located in Hopkinsville, Kentucky, valued at $125,000.00 with a mortgage of $98,524.00, and also a 1/6 undivided interest in an unencumbered 100–acre farm in Simpson County, Kentucky, valued at $30,000.00. The Debtors listed aggregate secured claims of $113,824.00, and aggregate unsecured claims of $98,487.00. On their Schedule I, the Debtors listed combined income of $5,152.00 a month. The Debtors listed monthly expenses of $4,095.00 on their Schedule J. Among their

---

1. See 28 U.S.C. § 157(b)(2)(A) and (L).

2. See 11 U.S.C. § 1328(a).

monthly expenses, the Debtors listed $1,000.00 for their mortgage and $400.00 for charitable contributions. According to the Debtors' Schedules, the Debtors had $1,057.00 in excess income per month and proposed to pay $1,000.00 a month into their Chapter 13 plan. The Debtors' Chapter 13 Plan was confirmed ("Confirmed Plan") by this Court on August 24, 2004, and was a 60 month plan providing for a 41 % distribution to prepetition unsecured nonpriority creditors. Unsecured claims totaling $104,000.00 were ultimately filed; the Confirmed Plan was modified on January 19, 2005; and the Confirmed Plan was reduced to a 35% plan.

On February 22, 2006, the Trustee filed the instant Motion to Modify Plan to a 75% Plan ("Motion to Modify"). The Debtors filed an Objection to Motion to Modify Plan ("Objection") on March 8, 2006, claiming that they have completed all their payments under the Confirmed Plan and, thus, the Trustee's Motion to Modify was untimely. The Debtors also filed a Motion for Entry of Discharge ("Motion for Discharge") on the grounds that they had fulfilled their obligations under their Confirmed Plan. The Court set the Trustee's Motion to Modify and the Debtors' Objection thereto and Motion for Discharge for a consolidated hearing on April 19, 2006.

The Trustee, the Debtors, and the Debtors' Counsel appeared at the consolidated hearing before this Court. Mrs. Wimpee testified as to the circumstances surrounding the sale of the farm and also certain expenses detailed on their Schedule J. Mrs. Wimpee began her testimony by explaining her 1/6 interest in the family farm, which was disclosed on Schedule A as follows:

> The farm belonged to my grandfather— my father's father. And when he died, in 1987, it was left to his three sons, one of which was my father—the youngest son. But my father died in 1989. So

his one-third share of the property was left to my brother and I, which left us each with a one-sixth interest. And it was an agreement between my father and his two brothers, the eldest of which farmed the land. And he is 80 or 81 and, just this past year, has needed to retire. And it was agreed, between them, that no—nobody would—no family member would force the sale of the property until he was ready to retire. So I've just known that I owned a sixth, but I didn't pursue finding out an appraised value, or anything. And I've just was sort of able to think, well, someday, maybe I will, you know, inherit some portion of that.

Mrs. Wimpee also testified that upon her uncle's retirement, the farm was sold in two portions and based on her 1/6 interest, she received a total of $72,723.00. The Debtors listed the value of her 1/6 interest on the real property at $30,000.00 on their Schedule A when the Chapter 13 case was filed on July 2, 2004. Mrs. Wimpee additionally testified that the $30,000.00 valuation was based on what her brother told her the property was worth when they inherited it in 1989.

Mrs. Wimpee also testified about several expenses listed on the Debtors' Schedule J. The Debtors listed $400.00 a month for charitable contributions to a church. While under oath, however, Mrs. Wimpee testified that she "generally give[s] $50 [a week] . . . a little bit more than 10% of my income," or approximately $200 a month. Mrs. Wimpee further testified that although she tithes on her income, her husband does not because he does not attend church and his income is irregular.

The Debtors also listed a monthly mortgage payment of $1,000.00 a month. Mrs. Wimpee testified that their ongoing monthly mortgage payment was $525.00 a month. The Debtors had a second mort-

gage, but it was paid off in its regular course during the last year.

The Debtors' Confirmed Plan states "it is further ordered that the debtor(s) be restrained from disposing of any property, in any manner whatsoever, without prior approval of this Court, and to promptly report to this Court any destruction of said property." Despite this language in the Confirmed Plan,[3] the Debtors did not inform the Court or the Trustee of the sale of the property. After the property was sold, the Debtors contacted their Chapter 13 attorney and inquired as to the amount needed to pay off their Confirmed Plan. After speaking to their attorney, the Debtors remitted a check for $41,000.00 to the Trustee. Thereafter, the current proceedings were filed with this Court and scheduled for a consolidated hearing.

### CONCLUSIONS OF LAW

The Trustee is currently before the Court on a Motion to Modify under 11 U.S.C. § 1329(a)(1), which states:

(a) At any time after confirmation of the plan but before the completion of payments under such plan, the plan may be modified, upon request of the debtor, the trustee, or the holder of an allowed unsecured claim, to—

(1) increase or reduce the amount of payments on claims of a particular class provided for by the plan

The Debtors object to the sought for modification, claiming that they have completed all payments due under their Confirmed Plan and that the Trustee's motion is, thus, untimely. Further, the Debtors argue that they are entitled to a full compliance discharge as a matter of law under 11 U.S.C. § 1328(a). This Court must determine, therefore, if the Debtors have com-

pleted all their payment obligations under their Confirmed Plan.

■ The Debtors' Confirmed Plan states, in relevant part here, "it is hereby ordered that the trustee, William W. Lawrence, collect a payment of $1000.00 each month for a period of 60 months from the debtor(s)." The Debtors state that they have fulfilled this obligation because they have paid the total monetary amount envisioned when the plan was confirmed, despite the fact that they have not made payments for the full sixty months. Considering a totality of the particular facts and circumstances and applicable law, a plain reading of the Confirmed Plan reveals that the Debtors have not completed their payments under the Confirmed Plan, and the Trustee's Motion to Modify is well taken.

■ An understanding of these consolidated proceedings requires, among other things, an examination of 11 U.S.C. § 1325(b)(1). Under § 1325(b)(1), the court cannot confirm a plan unless it either (1) provides for full payment of all allowed unsecured claims, or (2) the debtor commits all of his disposable income for a period of not less then three years. The Debtors in the current case could not fully pay their allowed prepetition unsecured nonpriority debt and instead chose to commit all their disposable income for a five year period, the maximum time permitted by the Bankruptcy Code. While the Debtors were not obligated to commit to a five year plan, no plan would have been approved if it did not extend for a minimum of three years. This Court does not believe under these facts and circumstances that the Debtors' early payment of the monetary equivalent of their Confirmed Plan relieves them of their obligation un-

---

**3.** 11 U.S.C. § 1327(a) provides that, "[t]he provisions of a confirmed plan bind the debt- or...."

der § 1325(b)(1) to commit to making payments for at least a minimum of three years. It is nonsensical to permit a debtor to create unilaterally a new post-confirmation plan that would not be confirmable.[4] As such, this Court cannot find, under these facts and circumstances, that the Debtors' plan payments are "complete" when they have failed to make the number of payments that they were ordered by this Court to remit to the Trustee under their Confirmed Plan. Furthermore they have they have not made the minimum amount of payments required by the Bankruptcy Code under § 1325(b)(1). Having found that the Debtors have not completed their Chapter 13 payments, the Trustee's Motion to Modify is not untimely and may be considered by this Court on the merits. The Court would also like to take a moment to note that the protection provided by the Bankruptcy Code was intended to aid the "honest but unfortunate debtor." *Cohen v. de la Cruz*, 523 U.S. 213, 213, 118 S.Ct. 1212, 140 L.Ed.2d 341(1998). As such, this Court expects debtors who seek such protection to deal with this Court, the Trustee, and all creditors with all candor. Mrs. Wimpee testified at the consolidated hearing that the Debtors' Schedule J was inaccurate, yet the Debtors failed to amend their Schedule J to portray their monthly expenses accurately. Had the Debtors' true financial picture been presented, the terms of the Confirmed Plan would have been different. Further, the Debtors' Confirmed Plan states that the Debtors are "restrained from disposing of any property, in any manner whatsoever, without prior approval of this Court, and to promptly report to this Court any destruction of said property." This provision cannot be ignored here. Despite this language, the Debtors sold the subject property without notice and Court authorization and did not inform the Court or the Trustee of the sale until after they remitted to the Trustee what they believed were the necessary funds to fully satisfy their plan on an accelerated early payout. The Court does not look kindly or with favor on debtors who, in an effort to thwart the modification process, attempt to pay off a plan prior to the Trustee discovering information that should have been fully disclosed. *See* Keith M. Lundin, *Chapter 13 Bankruptcy*, 3 Postconfirmation Practice § 253–10 (3rd Ed.2004). The Debtors were aware of additional funds available to satisfy more fully their creditors, yet chose to use stealth, possible deception or inappropriate lack of care in an attempt to avoid or circumvent these obligations. As noted above, however, the Bankruptcy Court, as a court of equity, does not allow debtors to abuse its protections. The Court balances a debtor's desire for a fresh start against the obligations owed to Trustees and unsecured creditors and the duties and responsibilities owed to the Court. It is based on this understanding of not only the binding language of the Confirmed Plan but also the purpose and spirit of the Bankruptcy Code that this Court finds that the Debtors have not fulfilled all their obligations under their Confirmed Plan. The Trustee's Motion to Modify, therefore, is timely.

The Trustee's Motion to Modify asked that the Debtors' Confirmed Plan be changed from a 35% plan to a 75% plan. At the evidentiary hearing, Mrs. Wimpee was forthright with the Court and testified that she and her husband have excess disposable income each month of which the Trustee was not aware. The Debtors' mortgage obligation had decreased from $1,000.00 a month to $525.00 a month. Additionally, Mrs. Wimpee testified that she was only making charitable contributions of $200.00 a month, as opposed to the

4. See 11 U.S.C. § 1329; Fed.R.Bankr.P. 3015(g).

$400.00 a month that she and her husband listed on their original Schedule J. Given these changes, the Debtors now have additional disposable income which can be used to satisfy their creditors and more fully comply with § 1325(b) of the Bankruptcy Code. This Court will, therefore, allow the Trustee additional time to file an amended Motion to Modify to determine what amount the Debtors' Chapter 13 plan payment obligations should be on an ongoing basis.