**In re Denise TRAVIS, Debtor.**

**Vito Boscaino, Plaintiff,**

v.

**Denise Travis, Defendant.**

**No. 05–3331.**

United States Bankruptcy Court, N.D. Ohio.

Aug. 31, 2006.

Ralph A. Kerns, Ralph A. Kerns, LLC, Worthington, OH, for Plaintiff.

Stephen T Priestap, Toledo, OH, for Defendant.

**DECISION AND ORDER**

RICHARD L. SPEER, Bankruptcy Judge.

Before this Court is the Plaintiff's Motion for Summary Judgment, together with the Parties' respective supporting Memoranda. The Plaintiff's Motion is brought on his Complaint to determine the dischargeability of multiple debts arising from and as a result of the termination of the marriage between the Parties. Previously, after reviewing the arguments raised by the Parties, the Court found that "oral arguments would be helpful to clarify many of the issues raised in the Parties' memoranda, e.g., specifying which debts are in controversy and, for each debt, setting forth the exact legal authority supporting the Parties' respective positions." (Doc. No. 25).

Just prior to the hearing set on this matter, counsel for the Parties requested, and were then afforded the opportunity to address the Court, in chambers, regarding the issues raised by the Plaintiff's Motion for Summary Judgment. After extensive discussions with the Court, counsel for the Parties ultimately agreed that, of the original points of controversy, only three[1] remained for resolution:

The dischargeability of two credit card debts, a Household Bank Credit Card and a Merrick Bank Visa Card, now totaling $1,366.00;

the dischargeability of $3,300.00 in contempt charges levied against the Defendant by the state divorce court for Plaintiff's attorney fees; and finally

whether the Plaintiff's liability on a $5,275.97 deficiency the Defendant incurred when her leased car was repos-

**1.** One point of controversy originally submitted to the Court was whether an escrow check, negotiated by the Defendant, but stemming entirely from funds deposited by the Plaintiff, was dischargeable. But, at the Court's direction, counsel for the Parties agreed to submit an entry consenting to the debt's nondischargeability.

sessed, and for which the Defendant was required to hold the Plaintiff harmless, is a nondischargeable debt.

After considering these points of controversy, the Court, after again reviewing those arguments already before it, as well as considering the positions espoused by counsel at the conference held in this matter, makes the following findings of fact and conclusions of law in accordance with Bankruptcy Rule 7052:

On the first point of controversy, that regarding the credit-card debts, the Plaintiff alleges that the "applications for these particular obligations were completed by [Defendant] under the name of [Plaintiff] for the specific purpose of deceiving the creditor, . . . ." (Doc. No. 1, at pg. 4). To this end, there is no dispute that the cards, although issued in his name, were never ordered by the Plaintiff. Rather, the circumstances tend to show that it was the Defendant who obtained and then used these cards—a fact which, although never actually admitted, was not repudiated.

■ Bankruptcy jurisprudence has long limited its protection to only honest debtors who have, due to unfortunate circumstances, incurred obligations beyond their ability to repay. *Cohen v. de la Cruz,* 523 U.S. 213, 118 S.Ct. 1212, 140 L.Ed.2d 341 (1998). Various provisions of the Bankruptcy Code implement this policy, including: § 523(a)(2), excepting from discharge debts arising from acts committed by the debtor with intent to defraud; and § 523(a)(4), debts resulting from acts of larceny and/or embezzlement. Here, to the extent that the Defendant obtained credit cards in the Plaintiff's name without his permission, both these exceptions to dischargeability are applicable.

No matter from what angle one approaches the matter, any person who, without permission, uses another's identity to obtain credit in the other's name, has engaged in fraudulent conduct violative of §§ 523(a)(2) and (a)(4). There is simply no other logical explanation; it can be presumed that a person intends the natural and probable consequences of their actions. *Accord Federal Deposit Insurance Corporation v. St. Paul Fire and Marine Insurance Company,* 942 F.2d 1032 (6th Cir.1991). In fact, not only does this type of conduct run afoul of bankruptcy law, Federal law also makes it a crime, punishable by up to 15 years in prison, for acts involving identity theft, defined as occurring when "any person uses, without lawful authority, a means of identification of another person with the intent to commit, . . . any unlawful activity that constitutes a violation of Federal law, or that constitutes a felony under any applicable State or local law[.]" 18 U.S.C. § 1028(a)(7).

■ Similarly, the Court also finds the $3,300.00 in penalties levied against the Defendant as the result of her contempt, nondischargeable as a matter of law. Section 523(a)(7) excepts from discharge any debt "to the extent such debt is for a fine, penalty, or forfeiture payable to and for the benefit of a governmental unit, and is not compensation for actual pecuniary loss, . . ." The breadth of this section extends to sanctions imposed for contempt. *See, e.g., Hansbrough v. Birdsell (In re Hercules Enters., Inc.),* 387 F.3d 1024, 1029 (9th Cir.2004). This is true even if, as is the situation here, the sanctions are payable to a party-litigant, as opposed to a governmental unit; the only prerequisite: that the sanctions have been imposed to uphold the dignity and authority of the court.[2]

2. *United States Dept. of Housing & Urban Development v. Cost Control Mktg. & Sales Mgmt. of Va., Inc.,* 64 F.3d 920, 928 (4th Cir.1995) ("[S]o long as the government's interest in enforcing a debt is penal, it makes no difference that injured persons may thereby

Consistent with upholding its dignity and authority, the contempt sanctions levied by the state court against the Defendant must be viewed as having been imposed for vindication, not remuneration. The record in this matter establishes, beyond any doubt, that the charges levied by the state court against the Defendant served to fulfill these two objectives: to punish the Defendant for her flagrant violation of numerous provisions of the state court's decree of divorce; and then through the imposition of sanctions, to coerce future compliance from the Defendant of the court's orders. Any benefit conferred on the Plaintiff was simply a means to an end.

The last issue submitted to the Court for resolution is whether the deficiency incurred on an auto loan, for which the Plaintiff is jointly liable, but for which the Defendant was to hold him harmless, is dischargeable. The briefs and arguments submitted to the Court on this issue correctly pointed to § 523(a)(15) as being the operative provision controlling this matter.

Under § 523(a)(15), any debt incurred as the result of the termination of a marriage, other than one in the nature of support which is excepted from discharge under paragraph (a)(5), is a nondischargeable obligation as to the other spouse. Two limited exceptions, however, are provided: (1) if the debtor does not have the "ability to pay" the martial obligation; or (2) if, on balance, the benefit of discharging the debt outweighs the detrimental consequences to the nondebtor spouse. By their very nature, however, determinations as to the applicability of both these exceptions to nondischargeability are factually intensive, involving a myriad of considerations—e.g., income, expenses, number of dependents, health, lifestyle and so on. This makes determinations concerning the applicability of § 523(a)(15)'s two exceptions to nondischargeability difficult. *See, e.g., Moden v. United States,* 404 F.3d 1335, 1342 (Fed.Cir.2005) (summary judgment should not be granted precipitously in fact intensive cases). This case is no exception.

■ Summary Judgment is only appropriate when, after viewing the evidence in the light most favorable to the nonmoving party, the record reflects that there exists no genuine issue of material fact, and that the moving party is entitled to judgment as a matter of law. FED.R.BANK. P. 7056(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Contrary, however, to this standard, not only do the written arguments submitted to the Court show significant factual disagreement on many of the matters pertinent in a § 523(a)(15) analysis, but it was represented that the financial circumstances of each of the Parties have changed significantly since the time the Defendant sought relief in this Court. Notwithstanding, at this juncture, in lieu of holding a Trial, the Court will afford the Parties the opportunity to stipulate to the salient facts which would otherwise be put into evidence at the Trial, after which time, the Court will make a determination.

Accordingly, consistent with this Decision, it is hereby,

*ORDERED* that the Motion for Summary Judgment of the Plaintiff, Vito Boscaino, is Granted with respect to the nondischargeability of these debts: (1) the credit card obligations with Household Bank Credit and Merrick Bank, totaling

---

receive compensation for pecuniary loss."); *PRP Wine Int'l Inc. v. Allison (In re Allison),* 176 B.R. 60, 64 (Bkrtcy.S.D.Fla.1994) (find-

ing attorney fees and costs awarded for opposing party's contemptuous behavior nondischargeable under § 523(a)(7)).

$1,366.00; and (2) the $3,300.00 in contempt charges levied against the Defendant by the state divorce court for Plaintiff's attorney fees.

IT IS FURTHER ORDERED that within 30 days, commencing from the issuance of this Order, the Parties file with the Court a stipulation of facts relevant to the issue of dischargeability on the auto-loan deficiency under 11 U.S.C. § 523(a)(15), otherwise this matter will be set for Trial.