

**NOT FOR PUBLICATION**

# UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re:<br>MARK STEVEN BOYKO,<br><br>　　　　　Debtor. | BAP No.  NC-23-1139-GFS<br><br>Bk. No. 21-30417 |
| MARK STEVEN BOYKO,<br>　　　　　Appellant,<br>v.<br>AUGUST BARIZON; SARA<br>BOROUMAND,<br>　　　　　Appellees. | Adv. No. 21-03042<br><br>**MEMORANDUM**[*] |

Appeal from the United States Bankruptcy Court
for the Northern District of California
Dennis Montali, Bankruptcy Judge, Presiding

Before: GAN, FARIS, and SPRAKER, Bankruptcy Judges.

## INTRODUCTION

Chapter 13[1] debtor Mark Steven Boyko appeals the bankruptcy court's nondischargeable judgment in favor of creditors August Barizon and Sara Boroumand (together "Appellees"). The bankruptcy court determined that Boyko made fraudulent statements and omissions to

---

[*] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, *see* Fed. R. App. P. 32.1, it has no precedential value, *see* 9th Cir. BAP Rule 8024-1.

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532.

induce Appellees to sign an agreement with Boyko's former partner, Ruben Citores, for construction work at their home. Due to Citores's faulty construction, Appellees incurred monetary damages of $483,582.

Boyko argues the court erred by finding him liable because he did not sign the contract, did not receive direct payments from Appellees, and did not have an active partnership with Citores. He maintains that Appellees failed to prove the elements of nondischargeability and their complaint should be precluded by prior state court findings that Citores operated a construction business without a license and may have stolen Boyko's identity. Finally, he disputes the award of postjudgment interest at the rate provided by state law.

The bankruptcy court properly applied the law, and its factual findings are not clearly erroneous. However, because the court determined both the existence and dischargeabilty of the debt, postjudgment interest should be calculated at the federal rate. We AFFIRM the decision and MODIFY the judgment to accrue interest at the federal judgment rate, effective as of the date of its entry.

## FACTS[2]

### A. Prepetition events

In 2017, Appellees bought a home and made immediate plans to substantially remodel by adding bedrooms and a bathroom and expanding

___

[2] We exercise our discretion to take judicial notice of documents electronically

2

the kitchen and living room. Their architect completed the plans and recommended a few contractors, including Boyko and Citores, whom he indicated were partners. Appellees contacted Citores and discussed their plans, timeline, budget, and their need to have a licensed contractor. Citores informed them that he had discussed the plans with Boyko, and the two had prepared a construction proposal. Appellees scheduled a meeting with Citores and Boyko in July 2017 to discuss the project.

Citores and Boyko arrived at the meeting together and brought copies of their construction proposal, which was under the name "Rubens & Boyko Construction." During the hour-long meeting, Appellees reviewed the proposal and asked Boyko about his qualifications and experience. Boyko told Appellees he was a licensed contractor who had completed many similar projects, and he would supervise the construction. When Appellees asked for Boyko's contractor's license number, he pointed to the construction proposal, which listed his license number at the top of each page. Boyko and Citores informed Appellees that they had insurance, and they provided a certificate of liability insurance with coverage of $1,000,000. They told Appellees they would complete the construction in about three months and after signing the contract, Boyko would obtain the permit. Appellees asked if they should make the initial payment to

---

filed in the adversary proceeding and main bankruptcy case. *See Atwood v. Chase Manhattan Mortg. Co. (In re Atwood)*, 293 B.R. 227, 233 n.9 (9th Cir. BAP 2003).

"Rubens & Boyko Construction," but Boyko told them to make the check out to Citores individually because he handles the money.

After the meeting, Appellees verified Boyko's contractor's license was active, and they signed the construction proposal on July 26, 2017. Boroumand then accompanied Boyko to San Mateo City Hall where Boyko signed for the construction permit as the licensed contractor for the project.

According to Appellees, the work on the project was incomplete and extremely defective. They state that Boyko and Citores acknowledged the deficiencies during multiple meetings in 2018, but after a couple of months, they stopped responding to their calls, emails, and text messages and abandoned the project in December 2018. Appellees hired new contractors to repair the faulty construction work, and they paid multiple subcontractors whom Citores and Boyko had not paid. Appellees later learned that Boyko's contractor's license was suspended six months prior to their July 2017 meeting, and he failed to maintain insurance coverage for the duration of the project.

Boyko claims that he met the Appellees only briefly, did not review any documents or make any representations about the project, and did not supervise or manage the work. He asserts that Citores improperly used Boyko's identity and contractor's license to do other remodeling projects. Boyko states that he got involved with Appellees only to help resolve the issues with Citores's faulty construction. Boyko filed a complaint against Citores with the Contractors License Board, and he contacted the San

4

Mateo County District Attorney's Office which informed him that they had an open case against Citores with Boyko listed as a victim of identity theft. Citores later pleaded guilty to operating a construction business without a license.

In 2020, Appellees filed suit in state court against Boyko and Citores for breach of contract, fraud, negligence, and other causes of action.

## B.    The bankruptcy case and adversary proceeding

In July 2021, while the state court case was pending, Boyko filed a chapter 13 petition. Appellees filed a proof of claim for $967,164, consisting of payments to Citores and his subcontractors, costs to repair the faulty work, storage costs, and emotional damages. They attached the construction proposal, the state court complaint, and a declaration outlining their damages and claims against Boyko. Appellees then filed their adversary complaint to hold the debt nondischargeable.

In response, Boyko filed a motion to dismiss, arguing that Appellees failed to state a claim for fraud because the allegations involved a breach of contract without independent tortious conduct. Boyko stated that he performed the work under the contract and had nearly finished the project when Appellees decided to have another contractor complete the job because they were unsatisfied with the roof. The bankruptcy court denied the motion.

In April 2022, Boyko filed a motion for summary judgment. Boyko contended that he was not liable because he never had a contract with

Appellees and did not have a partnership with Citores. He argued that he was the victim of identity theft, and the court should apply issue preclusion to find him not liable because Citores pleaded guilty to conducting a construction business without a license.

Also in April 2022, Boyko filed an objection to Appellees' proof of claim. He asserted that Appellees did not attach any supporting documentation and they failed to produce evidence to support their claim because Boyko did not sign the contract or receive any payments from Appellees. The bankruptcy court consolidated the claim objection with the motion for summary judgment and, after a hearing, denied both. The court determined there was a genuine dispute of material fact because Boyko's version of events was in sharp contrast with Appellees' version, and it reasoned that the criminal case against Citores was irrelevant to whether Boyko made fraudulent representations under § 523(a)(2)(A). The court noted that Appellees' proof of claim provided prima facie evidence sufficient to allow the claim, subject to proof at trial.

## C. The trial and the court's decision

At the June 2023 trial, Boyko admitted he was hired by Appellees to remodel their home, but he disputed the contention that he lacked the intent to manage and supervise the project. His trial testimony contradicted his deposition in which he claimed he never intended to manage and supervise the project.

6

Boyko testified that he previously ceased his partnership with Citores because of a lawsuit over faulty construction work, and he did not want to be directly associated with Citores on construction projects. Notwithstanding his concerns, Boyko acknowledged he had an agreement with Citores that when he needed a permit for a construction project, Boyko would use his contractor's license to obtain the permit and ensure the construction passed the city inspection. Boyko admitted Citores paid him $8,000 for obtaining the permits for Appellees' project.

On July 21, 2023, the bankruptcy court rendered an oral ruling holding the debt nondischargeable under § 523(a)(2)(A). The court determined that Boyko made false representations that he would be the contractor for Appellees' project, and he made fraudulent omissions about his relationship with Citores. The court held that Boyko intended to deceive Appellees based on inconsistencies between his trial testimony and deposition, which caused the court to reject his testimony as not credible. It determined that Appellees justifiably relied on the misrepresentations to their detriment, and they sustained monetary damages in the amount asserted in their proof of claim, but not emotional damages.

The court entered its nondischargeable judgment on July 27, 2023, which provided for postjudgment interest at 10% per annum under California Code of Civil Procedure § 685.010(a). Boyko timely appealed.

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(I). We have jurisdiction under 28 U.S.C. § 158.

## ISSUE

Did the bankruptcy court err by holding the debt nondischargeable under § 523(a)(2)(A)?

## STANDARDS OF REVIEW

The ultimate question of whether a claim is nondischargeable is a mixed question of law and fact, which we review de novo. *Carillo v. Su (In re Su)*, 290 F.3d 1140, 1142 (9th Cir. 2002). Under de novo review, "we consider a matter anew, as if no decision had been made previously." *Francis v. Wallace (In re Francis)*, 505 B.R. 914, 917 (9th Cir. 2014).

When the appellant challenges the bankruptcy court's factual findings supporting its nondischargeability decision, we review those findings for clear error. *In re Su*, 290 F.3d at 1142. Factual findings are clearly erroneous if they are illogical, implausible, or without support in the record. *Retz v. Samson (In re Retz)*, 606 F.3d 1189, 1196 (9th Cir. 2010). "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Anderson v. City of Bessemer City*, 470 U.S. 564, 574 (1985).

# DISCUSSION

Boyko argues the bankruptcy court erred by finding him liable because Appellees' contract was with "Rubens & Boyko Construction," a nonexistent entity, and he did not receive any payments from Appellees. He maintains that without a partnership, he cannot be liable for Citores's fraud, and the bankruptcy court lacked authority to find Citores liable and impute that fraud to Boyko. He also argues the bankruptcy court erroneously based its factual findings on Boyko's failure to refute Appellees' contentions rather than Appellees' burden to prove each element by a preponderance of the evidence.

## A. Legal standards governing nondischargeability

Section 523(a)(2)(A) excepts from discharge any debt "obtained by false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition." To prevail on a nondischargeability claim under § 523(a)(2)(A), a creditor must prove, by a preponderance of the evidence: (1) misrepresentation, fraudulent omission, or deceptive conduct by the debtor; (2) knowledge of the falsity or deceptiveness of his statement or conduct; (3) an intent to deceive; (4) justifiable reliance on the debtor's statement or conduct; and (5) damage proximately caused by its reliance on the statement or conduct. *Turtle Rock Meadows Homeowners Ass'n v. Slyman (In re Slyman)*, 234 F.3d 1081, 1085 (9th Cir. 1996). A fraudulent omission of a material fact may constitute a false representation if the debtor is under a duty to

disclose. *Apte v. Japra, M.D., F.A.C.C., Inc. (In re Apte)*, 96 F.3d 1319, 1323-24 (9th Cir. 1996); *Citibank (South Dakota), N.A. v. Eashai (In re Eashai)*, 87 F.3d 1082, 1089 (9th Cir. 1996).

**B.    The bankruptcy court did not err by determining Boyko committed fraud.**

**1.    Boyko was liable for his own conduct.**

Boyko's primary contention on appeal is that after Appellees signed the contract, their subsequent damages are limited to breach of contract. Because he did not have a contractual relationship with Appellees or an active partnership with Citores, Boyko argues Appellees have no claim against him and there is no debt which could be held nondischargeable.

Section 523(a)(2)(A) excepts from discharge debts caused by fraud. Boyko is liable for his own fraudulent misrepresentations and omissions—and the consequential damages caused by Appellees' reliance on his fraud—regardless of whether he had a contract with Appellees or a partnership with Citores. As the bankruptcy court correctly explained:

> But for [Boyko's] active defrauding of [Appellees] about his expected critical and mandatory role in the execution of the project, including his active concealment of Citores'[s] prior mischief, and lack of a license, there would have been no project and no damages suffered by [Appellees]. What he did and didn't do, as just described was actual fraud, regardless of the existence or non-existence of a partnership.

*Hr'g Tr.* at 15:14-21, July 21, 2023.

And the bankruptcy court correctly held that § 523(a)(2)(A) does not limit a debt for fraud to amounts received by the debtor. *See Cohen v. de la Cruz*, 523 U.S. 213, 215 (1998) (Section 523(a)(2)(A) "prevents the discharge of all liability arising from fraud"); *Ghomeshi v. Sabban (In re Sabban)*, 600 F.3d 1219, 1222 (9th Cir. 2010) ("[W]e have concluded that there is no requirement that the debtor have received a direct or indirect benefit from his or her fraudulent activity in order to make out a violation of § 523(a)(2)(A)." (cleaned up)).

In short, it is irrelevant whether Boyko signed the contract, received payments from Appellees, or had a partnership with Citores, because the bankruptcy court found he made intentional fraudulent representations and omissions, which caused Appellees' damages. Accordingly, because Boyko's liability is based on his own conduct, we reject his arguments that: (1) the bankruptcy court lacked authority to hold Citores liable for fraud and impute that liability to him as a partner; and (2) the bankruptcy court could not find Boyko liable based on prior state court rulings of Citores's wrongdoing.

### 2. Appellees' unrefuted evidence supports the bankruptcy court's findings.

Boyko claims his statements at the July 2017 meeting were merely opinions regarding future events and cannot form the basis to rescind a contract for fraud. Once Appellees signed the contract with Citores, Boyko argues their subsequent damages are based on breach of contract and are

11

thus dischargeable under the holding of *Lockerby v. Sierra*, 535 F.3d 1038 (9th Cir. 2008).

In *Lockerby*, the Ninth Circuit held that an intentional breach of contract does not give rise to nondischargeability under § 523(a)(6) unless the breach is accompanied by tortious conduct under state law. *Id.* at 1040. But Appellees' complaint under § 523(a)(2)(A) is based on Boyko's misrepresentations or actual fraud, not on a purported intentional breach of contract.

To prevail on their § 523(a)(2)(A) claim, Appellees must prove that Boyko made a fraudulent misrepresentation with intent to deceive.[3] Appellees testified that at the July 2017 meeting Boyko fraudulently represented that he would manage and supervise the project, and Appellees would not have signed the construction agreement had they known his true intent. Boyko disputed Appellees' version of events, but the bankruptcy court did not find him credible; it believed Appellees and determined Boyko made the misrepresentations with intent to deceive. We give particular deference to the bankruptcy court's credibility findings, *In re Retz*, 606 F.3d at 1196, and the bankruptcy court's choice between two possible views of the evidence cannot be clearly erroneous, *Anderson*, 470

---

[3] On appeal, Boyko does not challenge the bankruptcy court's finding that he made fraudulent omissions, which forms an independent basis to affirm. *See Smith v. Marsh*, 194 F.3d 1045, 1052 (9th Cir. 1999).

U.S. at 573-74. The evidence supports the bankruptcy court's factual findings, and we discern no clear error.

Next, Boyko argues that the bankruptcy court erred by determining the validity and amount of Appellees' claim based on his failure to refute their prima facie claim instead of independently analyzing the evidence of damages. In denying Boyko's claim objection, the court determined that Appellees presented sufficient evidence to make a prima facie showing of their claim, subject to proof at trial.

Appellees presented a detailed declaration and trial testimony from Boroumand outlining their damages. Boyko cross-examined Boroumand about Appellees' measure of damages and argued to the court that damages should be limited to the $8,000 Boyko received from Citores. But he did not present any evidence to refute the amount of their claim. The bankruptcy court properly evaluated the evidence and considered Boyko's argument. It reasoned that Appellees did not offer any concrete proof of emotional harm, and it disallowed their request for such damages. The court then determined that Appellees provided evidence of their monetary damages in the amount of $483,582, and those damages were caused by Boyko's fraud under the holding of *Cohen v. de la Cruz*, 523 U.S. 213, 215 (1998). Appellees proved their damages by a preponderance of the evidence, and Boyko does not demonstrate any error by the bankruptcy court.

## C. Boyko's other arguments

Boyko contends the bankruptcy court erred by admitting his motion to dismiss as evidence in the trial. He argues that the motion was unverified, included incorrect statements of fact, and was withdrawn prior to Boyko filing his motion for summary judgment.

We review a bankruptcy court's evidentiary rulings for abuse of discretion, and then only reverse if any error would have been prejudicial to the appellant. *Van Zandt v. Mbunda (In re Mbunda)*, 484 B.R. 344, 351 (9th Cir. BAP 2012), *aff'd*, 604 F. App'x 552 (9th Cir. 2015).

But Boyko makes no argument—much less a credible showing—that he was prejudiced by admission of the motion to dismiss. *See Harper v. City of L.A.*, 533 F.3d 1010, 1030 (9th Cir. 2008) ("We afford broad discretion to a district court's evidentiary rulings. To reverse such a ruling, we must find that the district court abused its discretion and the error was prejudicial. A reviewing court should find prejudice only if it concludes that, more probably than not, the lower court's error tainted the verdict." (cleaned up)).

The bankruptcy court based its decision on the evidence offered by Appellees and on Boyko's lack of credibility. There is nothing in the record that indicates the court relied on statements made in Boyko's motion to dismiss, and Boyko offers no argument why the court's decision would have been any different if the motion to dismiss were excluded.

14

Consequently, admission of the motion to dismiss cannot constitute reversible error.

Finally, Boyko argues that the court erred by allowing postjudgment interest at the California rate of 10% per annum. If a bankruptcy court holds nondischargeable an existing state court judgment debt, the judgment will continue to accrue postjudgment interest under state law. *Hamilton v. Elite of L.A., Inc. (In re Hamilton)*, 584 B.R. 310, 322-23 (9th Cir. BAP 2018), *aff'd*, 785 F. App'x 438 (9th Cir. 2019). But where there is no prior state court judgment, and the bankruptcy court must determine both the existence of the debt and its dischargeability, federal law governs postjudgment interest. *Id.* at 324. Because Appellees did not have a prior state court judgment, the bankruptcy court's judgment should accrue interest at the federal rate, as required by 28 U.S.C. § 1961(a).

## CONCLUSION

Based on the foregoing, we AFFIRM the bankruptcy court's judgment and MODIFY it to incur postjudgment interest at the federal rate as of the date of judgment.

15